# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

USCA No. 22-3452

_____

THOMAS JOSEPH BREWER,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION
HONORABLE LAWRENCE L. PIERSOL
UNITED STATES DISTRICT COURT JUDGE

_____

## APPELLANT'S BRIEF

_____

Jason J. Tupman, Federal Public Defender
Molly C. Quinn, Chief Appellate Attorney
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Main Avenue, Suite 400
Sioux Falls, SD 57104
Phone: (605) 330-4489
Fax: (605) 330-4499

ATTORNEYS FOR APPELLANT

## SUMMARY OF THE CASE

Thomas Joseph Brewer was convicted of voluntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153 and discharge of a firearm during the commission of a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and sentenced to 217 months in prison. Approximately two years after Brewer's sentencing, the Supreme Court invalidated part of the definition of "crime of violence" as unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319 (2019). Brewer filed a motion to vacate, set aside, or correct his § 924(c) conviction and sentence under *Davis*. He argued that voluntary manslaughter qualified as a "crime of violence" solely under the now-invalidated residual clause in 18 U.S.C. § 924(c)(3)(B) and did not qualify under the remaining force clause in 18 U.S.C. § 924(c)(3)(A). The district court found that voluntary manslaughter still qualifies as a "crime of violence" under the force clause in § 924(c)(3)(A) and denied Brewer's § 2255 motion. The district court granted a certificate of appealability, and Brewer now appeals.

## REQUEST FOR ORAL ARGUMENT

Brewer requests 15 minutes of oral argument to discuss whether voluntary manslaughter qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A).

Appellate Case: 22-3452     Page: 2     Date Filed: 03/02/2023 Entry ID: 5250783

# TABLE OF CONTENTS

Page(s)

Summary of the Case ................................................................................. i

Request for Oral Argument ....................................................................... i

Table of Authorities ................................................................................. iv

Jurisdictional Statement ........................................................................... 1

Statement of the Issue Presented for Review ........................................... 1

Statement of the Case .............................................................................. 2

Summary of the Argument ....................................................................... 4

Argument .................................................................................................. 5

       Brewer's conviction and sentence for discharge of a firearm during
       the commission of a crime of violence were imposed in violation of
       his due process rights in light of the Supreme Court's decision in
       *United States v. Davis*, 139 S. Ct. 2319 (2019) ...................................... 5

       A.    Voluntary manslaughter is not a "crime of violence" under the
           § 924(c) force clause because it can be committed with a
           mental state of depraved heart recklessness ........................................... 8

           1.    This Court's pre-*Borden* holding that voluntary
               manslaughter qualified as a "crime of violence" under the
               § 924(c) force clause is not binding here ...................................... 9

           2.    Voluntary manslaughter can be committed with a mental
               state of depraved heart recklessness, which falls outside the
               force clause as interpreted by *Borden* ...........................................13

       B.    Voluntary manslaughter encompasses prenatal conduct, which
           is not conduct "against the person . . . of another" within the
           meaning of § 924(c)(3)(A)........................................................................24

Appellate Case: 22-3452    Page: 3    Date Filed: 03/02/2023 Entry ID: 5250783

Conclusion ............................................................................................. 29

Certificate of Service ........................................................................... 31

Certificate of Compliance .................................................................... 32

Addendum

    Memorandum and Order (Civ. R. Doc. 21) .................................... Add. 1

    Judgment (Civ. R. Doc. 22) ........................................................... Add. 15

    Memorandum and Order (Civ. R. Doc. 27) .................................. Add. 16

Appellate Case: 22-3452    Page: 4    Date Filed: 03/02/2023 Entry ID: 5250783

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Borden v. United States*, 141 S. Ct. 1817 (2021) ................................................................*passim*

*United States v. Davis*, 139 S. Ct. 2319 (2019) ................................................................*passim*

*United States v. Taylor*, 142 S. Ct. 2015 (2022) .................................................... 6, 7

*Voisine v. United States*, 579 U.S. 686 (2016) ........................................... 10, 11

**United States Court of Appeals Cases**

*Alvarado-Linares v. United States*, 44 F.4th 1334 (11th Cir. 2022) .......................................23

*Jones v. United States*, 39 F.4th 523 (8th Cir. 2022) .........................................................7

*McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020) ................................................*passim*

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) .............................................23

*United States v. Black Elk*, 579 F.2d 49 (8th Cir. 1978) .........................................18

*United States v. Boose*, 739 F.3d 1185 (8th Cir. 2014) .................................1, 22, 23

*United States v. Chambers*, 898 F.2d 148 (table), No. 88–5653, 1990 WL 29160 (4th Cir. Mar. 5, 1990) ...........................................................................................18

*United States v. Chippewa*, 141 F.3d 1180 (table), No. 97-30160, 1998 WL 123150 (9th Cir. Mar. 17, 1998) ...........................................................................19

*United States v. Eagle Elk*, 658 F.2d 644 (8th Cir. 1981) .........................................8

*United States v. Fleming*, 739 F.2d 945 (4th Cir. 1984) .................................... 19, 22

*United States v. Flute*, 929 F.3d 584 (8th Cir. 2019) ................................... 26, 27

*United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016) .................................... 10, 12

iv

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022).............................................23

*United States v. Hoxworth*, 11 F.4th 693 (8th Cir. 2021)............................................12

*United States v. Lemus-Gonzalez*, 563 F.3d 88 (5th Cir. 2009).................................20

*United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) .............................................23

*United States v. Merritt*, 961 F.3d 1105 (10th Cir. 2020)...........................................19

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011).....................................26

*United States v. Schneider*, 905 F.3d 1088 (8th Cir. 2018)........................................22

*United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005)..........................................18

*United States v. Sheffey*, 57 F.3d 1419 (6th Cir. 1995)..............................................19

*United States v. Solís-Vásquez*, 10 F.4th 59 (1st Cir. 2021) .................................23, 24

*United States v. Steward*, 880 F.3d 983 (8th Cir. 2018)...............................................9

*United States v. Williams*, 537 F.3d 969 (8th Cir. 2008)..........................................9, 10

*Wakaksan v. United States*, 367 F.2d 639 (8th Cir. 1966) .........................................21

**United States Code**

1 U.S.C. § 8(a) ...................................................................................................1, 25, 26

1 U.S.C. § 8(b) ............................................................................................................26

18 U.S.C. § 16................................................................................................................11

18 U.S.C. § 16(a) ..........................................................................................................14

18 U.S.C. § 922(g)(9) ...................................................................................................10

18 U.S.C. § 924(c)(1) ....................................................................................................21

Appellate Case: 22-3452    Page: 6    Date Filed: 03/02/2023 Entry ID: 5250783

18 U.S.C. § 924(c)(1)(A) ................................................................................6

18 U.S.C. § 924(c)(1)(A)(iii) ...............................................................i, 2, 4, 6

18 U.S.C. § 924(c)(3) ..............................................................................6, 21

18 U.S.C. § 924(c)(3)(A) ...................................................................*passim*

18 U.S.C. § 924(c)(3)(B) ...................................................................i, 2, 3, 4

18 U.S.C. § 924(c)(5) ...............................................................................21

18 U.S.C. § 924(e)(2)(B)(i) ...............................................................13, 14

18 U.S.C. § 1028(b)(3)(B) ........................................................................21

18 U.S.C. § 1111 .......................................................................................2

18 U.S.C. § 1112 .........................................................................i, 2, 8, 26

18 U.S.C. § 1112(a) .......................................................................1, 26, 27

18 U.S.C. § 1153 ....................................................................................i, 2

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 2253 .......................................................................................1

28 U.S.C. § 2255 .......................................................................................1

28 U.S.C. § 2255(a) ..................................................................................5

28 U.S.C. § 2255(b) ..................................................................................5

## Other Authorities

Fed. R. App. P. 4(a)(1)(B)(i) ....................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................3

Appellate Case: 22-3452     Page: 7     Date Filed: 03/02/2023 Entry ID: 5250783

Judgment, *United States v. Brewer*, No. 17-3294 (8th Cir. Dec. 15, 2017) ..........................2

USSG § 4B1.2(a)(1) ...........................................................................22

Wayne R. LaFave, 2 Substantive Criminal Law § 14.4(a)
(3d ed. Oct. 2022 update) .....................................................................18

Wayne R. LaFave, 2 Substantive Criminal Law § 15.2(a)
(3d ed. Oct. 2022 update) .....................................................................9

vii

# JURISDICTIONAL STATEMENT

Appellant Thomas Joseph Brewer appeals from the district court's order denying his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and its final judgment entered on September 13, 2022. App. 58-72; Civ. R. Doc. 21; Civ. R. Doc. 22.[1] The district court granted a certificate of appealability. App. 86-89; Civ. R. Doc. 27. Brewer timely filed his notice of appeal on November 10, 2022. App. 79; Civ. R. Doc. 24; *see also* Fed. R. App. P. 4(a)(1)(B)(i). The district court had jurisdiction under 28 U.S.C. § 2255. This court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

**Brewer's conviction and sentence for discharge of a firearm during the commission of a crime of violence were imposed in violation of his due process rights in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).**

*Borden v. United States*, 141 S. Ct. 1817 (2021)
*United States v. Davis*, 139 S. Ct. 2319 (2019)
*McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020),
    *cert. denied,* 141 S. Ct. 2819 (2021)
*United States v. Boose*, 739 F.3d 1185 (8th Cir. 2014)
1 U.S.C. § 8(a)
18 U.S.C. § 924(c)(3)(A)
18 U.S.C. § 1112(a)

---

[1] Brewer will cite to the record of the civil case (No. 5:20-cv-05042-LLP) as "Civ. R. Doc. __," and to the record of the underlying criminal case (No. 5:16-cr-50174-JLV) as "Cr. R. Doc. __," with a parallel citation to the Joint Appendix.

Appellate Case: 22-3452     Page: 9     Date Filed: 03/02/2023 Entry ID: 5250783

## STATEMENT OF THE CASE

In 2016, Thomas Joseph Brewer was charged with second-degree murder in violation of 18 U.S.C. §§ 1111 and 1153 and discharge of a firearm during the commission of a crime of violence, specifically second-degree murder, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). App. 90-91; Cr. R. Doc. 13.

Brewer entered into a plea agreement with the government under which he agreed to plead guilty to a superseding information charging voluntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153 and discharge of a firearm during the commission of a crime of violence, specifically voluntary manslaughter, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). App. 93; Cr. R. Doc. 49, at 2; *see also* App. 103; Cr. R. Doc. 52.

In October 2017, Brewer was sentenced to 217 months in prison (97 months for voluntary manslaughter and 120 months for the § 924(c) count, to run consecutively) and 5 years of supervised release (3 years for voluntary manslaughter and 5 years for the § 924(c) count, to run concurrently). App. 110-12; Cr. R. Doc. 78, at 1-3. He filed a direct appeal, which was dismissed upon motion of the government. Judgment, *United States v. Brewer*, No. 17-3294 (8th Cir. Dec. 15, 2017); *see also* App. 58; Civ. R. Doc. 21, at 1.

In June 2019, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319 (2019)

Appellate Case: 22-3452    Page: 10    Date Filed: 03/02/2023 Entry ID: 5250783

Brewer filed a motion to vacate his § 924(c) conviction and sentence based on *Davis*. App. 1-3; Civ. R. Doc. 1. He argued that his conviction was based on the use of a firearm in connection with voluntary manslaughter, which qualified as a "crime of violence" solely under the now-invalidated residual clause in § 924(c)(3)(B). App. 2; Civ. R. Doc. 1, at 2; App. 4-10; Civ. R. Doc. 2.

Upon motion of the government, the case was held in abeyance pending the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). App. 11-12; Civ. R. Doc. 4; App. 13-15; Civ. R. Doc. 5; App. 16-18; Civ. R. Doc. 6. The Supreme Court issued its opinion in *Borden* in June 2021, holding that an offense that can be committed with a *mens rea* of recklessness does not qualify as a "violent felony" under the force clause of the Armed Career Criminal Act. 141 S. Ct. at 1821-22 (plurality opinion); *id.* at 1835 (Thomas, J., concurring). The district court then lifted the abeyance and ordered the government to respond to Brewer's motion. App. 19; Civ. R. Doc. 9. The government filed a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), an answer denying Brewer's claims, and a response in opposition to his motion. App. 20-21; Civ. R. Doc. 11; App. 22-23; Civ. R. Doc. 12; App. 24-35; Civ. R. Doc. 13.

On September 13, 2022, the district court entered a memorandum and order denying Brewer's § 2255 motion. App. 58-71; Civ. R. Doc. 21. The district court

found that this Court's pre-*Borden* holding that voluntary manslaughter qualified as a crime of violence under the § 924(c) force clause, was not altered by *Borden*. App. 68; Civ. R. Doc. 21, at 11 (discussing *McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020), *cert. denied,* 141 S. Ct. 2819 (2021)). The district court concluded:

> The elements of Voluntary Manslaughter are an intentional killing in the heat of passion with a state of mind more culpable than ordinary recklessness, such as depraved heart or extreme recklessness. Therefore, Voluntary Manslaughter is a crime of violence under 18 U.S.C. § 924(c)(3)(A). Petitioner has not demonstrated that he is entitled to relief from the sentence imposed as a result of his commission of a crime of violence.

App. 71; Civ. R. Doc. 21, at 14. The district court issued judgment the same day. App. 72; Civ. R. Doc. 22. On November 23, 2022, the district court granted Brewer's request for a certificate of appealability. App. 86-89; Civ. R. Doc. 27. Brewer now appeals the district court's finding that voluntary manslaughter qualifies as a "crime of violence" under the § 924(c) force clause and the denial of his § 2255 motion.

## SUMMARY OF THE ARGUMENT

Brewer was convicted of discharge of a firearm in connection with a crime of violence, specifically voluntary manslaughter, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Voluntary manslaughter qualified as a "crime of violence" solely under the residual clause in 18 U.S.C. § 924(c)(3)(B), which was held unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319 (2019). It does not

4

qualify as a "crime of violence" under the remaining force clause in 18 U.S.C.

§ 924(c)(3)(A).

Voluntary manslaughter encompasses two types of conduct that fall outside the force clause: (1) depraved heart recklessness, and (2) a pregnant person's prenatal conduct committed *before* there is a "person . . . of another" within the meaning of federal law. For each independent reason, voluntary manslaughter does not qualify under the force clause. It only qualified under the now-invalidated residual clause. This Court's prior rejection of these arguments in *McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020), *cert. denied,* 141 S. Ct. 2819 (2021), is not binding in light of the Supreme Court's intervening opinion in *Borden v. United States*, 141 S. Ct. 1817 (2021).

Because Brewer's conviction and sentence for the § 924(c) offense were based on the residual clause, he is entitled to relief under *Davis*, and the district court erred in denying his 28 U.S.C. § 2255 motion. Brewer's conviction and sentence for the § 924(c) offense should be vacated under 28 U.S.C. § 2255(a) and (b).

## ARGUMENT

**Brewer's conviction and sentence for discharge of a firearm during the commission of a crime of violence were imposed in violation of his due process rights in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).**

Brewer's conviction and sentence for discharge of a firearm during the commission of a crime of violence were imposed in violation of his due process rights

5

in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). Brewer's underlying offense—voluntary manslaughter—qualified as a "crime of violence" solely under the residual clause invalidated in *Davis*. It did not qualify under the remaining force clause in 18 U.S.C. § 924(c)(3)(A). This Court reviews the legal issue of whether voluntary manslaughter qualifies as a "crime of violence" *de novo*. *McCoy v. United States*, 960 F.3d 487, 489 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2819 (2021).

Brewer was convicted of discharging a firearm during a "crime of violence" in violation of § 924(c)(1)(A)(iii). Section 924(c)(1)(A) provides that any person who uses or carries a firearm during and in relation to any federal crime of violence or drug trafficking crime or who possesses a firearm in furtherance of such crime shall be subject to a mandatory consecutive sentence of 5 years, 7 years, or 10 years, depending on whether the firearm was used, carried, or possessed (5 years), brandished (7 years), or discharged (10 years). 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines "crime of violence" as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is known as the "force clause" or "elements clause." *See United States v. Taylor*, 142 S. Ct. 2015, 2019 (2022) ("elements clause");

6

*McCoy*, 960 F.3d at 489 ("force clause"). Subsection (B) is known as the "residual clause." *Davis*, 139 S. Ct. at 2323-24.

The Supreme Court struck down the residual clause as void for vagueness in *Davis*. *Id.* at 2336.[2] After *Davis*, for an offense to qualify as a "crime of violence," it must fall under the remaining § 924(c) force clause. "To determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause, [the Court] must apply a 'categorical approach.'" *Taylor*, 142 S. Ct. at 2020. Under this approach, the Court looks not to the facts of the particular case, but instead to whether the elements of the statute in question categorically fall under the federal definition. *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (plurality opinion). "And answering that question does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime." *Taylor*, 142 S. Ct. at 2020. "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.* "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard," and does not qualify as

---

[2] This Court has held that *Davis* is a substantive rule that applies retroactively to cases on collateral review. *Jones v. United States*, 39 F.4th 523, 526 (8th Cir. 2022).

a "crime of violence." *Borden*, 141 S. Ct. at 1822 (plurality opinion) (addressing Armed

Career Criminal Act (ACCA)).

### A. Voluntary manslaughter is not a "crime of violence" under the § 924(c) force clause because it can be committed with a mental state of depraved heart recklessness.

The underlying "crime of violence" in Brewer's case was voluntary

manslaughter. The federal manslaughter statute states:

(a) Manslaughter is *the unlawful killing of a human being without malice*. It is of two kinds:

*Voluntary--Upon a sudden quarrel or heat of passion.*

Involuntary--In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States . . .

18 U.S.C. § 1112 (emphasis added). Voluntary manslaughter requires proof "of a

killing upon sudden quarrel or heat of passion in contradistinction to evidence of

malice required for second degree murder." *United States v. Eagle Elk*, 658 F.2d 644,

648 (8th Cir. 1981) (citing *Beardslee v. United States*, 387 F.2d 280, 292 (8th Cir. 1967)).

"[U]nlike involuntary manslaughter, which most often occurs when the defendant

lacks the requisite mental state to commit homicide, voluntary manslaughter functions

more like a partial defense to murder, describing conduct undertaken intentionally but

Appellate Case: 22-3452   Page: 16   Date Filed: 03/02/2023 Entry ID: 5250783

in the 'heat of passion.'" *United States v. Steward*, 880 F.3d 983, 987 (8th Cir. 2018) (citations omitted).

Voluntary manslaughter can be committed "with a mental state constituting 'a general intent to kill, intent to do serious bodily injury, or with depraved heart recklessness.'" *McCoy*, 960 F.3d at 489 (quoting *United States v. Serawop*, 410 F.3d 656, 666 (10th Cir. 2005)); *see also* Wayne R. LaFave, 2 Substantive Criminal Law § 15.2(a) (3d ed. Oct. 2022 update) ("Although the killing of another person—when accompanied by an intent to kill, or by an intent to do serious bodily injury short of death, or when resulting from such unreasonable and highly reckless conduct as to 'evince a depraved heart'—often amounts to murder, yet it may under certain circumstances amount only to voluntary manslaughter."). The minimum mental state required for voluntary manslaughter—depraved heart recklessness—falls outside the force clause as interpreted by the Supreme Court in *Borden*.

**1. This Court's pre-*Borden* holding that voluntary manslaughter qualified as a "crime of violence" under the § 924(c) force clause is not binding here.**

Brewer acknowledges that in 2020, this Court held that federal voluntary manslaughter qualified as a "crime of violence" under the § 924(c) force clause. *McCoy*, 960 F.3d at 489-90. *McCoy* was decided before *Borden* and was based on precedent that was either distinguished or abrogated by the Supreme Court in that case. Therefore, it does not control here. *Cf. United States v. Williams*, 537 F.3d 969,

9

975 (8th Cir. 2008) (noting that prior panel opinion is no longer binding when the earlier opinion is cast into doubt by a Supreme Court decision).

In *McCoy*, the petitioner argued that voluntary manslaughter did not qualify as a crime of violence because it encompassed reckless conduct. 960 F.3d at 489. This Court rejected that argument, relying on *Voisine v. United States*, 579 U.S. 686 (2016) and *United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016):

> Our precedent all but resolves the issue against McCoy. In *Voisine v. United States*, . . . the Supreme Court concluded that reckless domestic assault qualifies as a "misdemeanor crime of violence" under 18 U.S.C. § 921(a)(33)(A)(ii) because it requires a "use . . . of physical force" committed by a person in certain domestic relationships with the victim. The Court ruled that reckless conduct "use[s] force, no less than one who carries out that same action knowingly or intentionally." Applying *Voisine*, we held in *United States v. Fogg* that a reckless drive-by shooting involved the "use . . . of physical force against the person of another" under § 924(e)(2)(B)(i), and thus qualified as a violent felony under the Armed Career Criminal Act. There is no material difference between the force clause at issue in *Fogg* and the force clause under § 924(c)(3)(A). We therefore conclude that voluntary manslaughter qualifies as a crime of violence under § 924(c)(3)(A).

*McCoy*, 960 F.3d at 489-90 (internal citations omitted). *Voisine* and *Fogg* addressed ordinary recklessness. They did not (and therefore *McCoy* did not) address the specific issue of whether depraved heart recklessness qualifies under the force clause.

*Voisine* addressed the definition of "misdemeanor crime of domestic violence" for the purposes of 18 U.S.C. § 922(g)(9). 579 U.S. at 689. That phrase was defined as "a misdemeanor under federal, state, or tribal law, committed by a person with a specified domestic relationship with the victim, that 'has, as an element, the use or

Appellate Case: 22-3452    Page: 18    Date Filed: 03/02/2023 Entry ID: 5250783

attempted use of physical force.'" *Id.* (quoting 18 U.S.C. § 922(a)(33)(A)). The *Voisine* Court held that this definition encompassed "acts of force undertaken recklessly." *Id.* at 698-99. The Court also expressly noted that it was *not* deciding whether the force clause in 18 U.S.C. § 16 (which is materially identical to the § 924(c) force clause at issue here) encompassed reckless conduct: "Like *Leocal [v. Ashcroft*, 543 U.S. 1 (2004)], our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior." *Id.* at 694 n.4. The Court acknowledged that "[c]ourts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." *Id.*

The possibility acknowledged in *Voisine* came true in *Borden*. There, the Court acknowledged *Voisine* and concluded that its reasoning did not apply to the ACCA force clause (which is materially identical to the § 924(c) force clause). The Court noted, "[t]oday, we reach the question we reserved in both *Leocal* and *Voisine*." *Borden*, 141 S. Ct. at 1825 (plurality opinion). "We must decide whether the elements clause's definition of 'violent felony'—an offense requiring the 'use of physical force against the person of another'—includes offenses criminalizing reckless conduct." *Id.* In finding that it did not, the *Borden* plurality found that "*Voisine* says nothing to the contrary." *Id. McCoy*'s reliance on *Voisine* to interpret the § 924(c) force clause does not survive *Borden*.

11

Further, *Fogg* (the other case cited by *McCoy*) relied on *Voisine* to hold that the ACCA force clause encompassed reckless conduct. *Fogg*, 836 F.3d at 956. This Court has recognized that *Borden* abrogated *Fogg. See United States v. Hoxworth*, 11 F.4th 693, 695 (8th Cir. 2021).

*McCoy*'s holding that voluntary manslaughter qualified as a crime of violence under the § 924(c) force clause even though it could be committed by certain reckless conduct was based on inapplicable and now-abrogated precedent. *McCoy* was decided when circuit precedent held that simple recklessness satisfied the force clause. It did not have to address whether *depraved heart* recklessness was sufficient under the force clause where simple recklessness was not. *McCoy* does not control the question here— whether voluntary manslaughter qualifies as a crime of violence under the § 924(c) force clause even though it encompasses depraved heart recklessness. Indeed, to Brewer's knowledge, this Court has not addressed whether federal voluntary manslaughter, second-degree murder, or any other statutes encompassing extreme recklessness qualify under the force clause after *Borden*.[3]

---

[3] The issue of whether federal second-degree murder qualifies as a "crime of violence" under the § 924(c) force clause is pending in *Janis v. United States*, No. 22-2471 (8th Cir.) (reply brief filed February 17, 2023).

Appellate Case: 22-3452     Page: 20     Date Filed: 03/02/2023 Entry ID: 5250783

### 2. Voluntary manslaughter can be committed with a mental state of depraved heart recklessness, which falls outside the force clause as interpreted by *Borden*.

Turning back to that question, in *Borden*, the Supreme Court held that the force clause requires a higher mental state than recklessness. There, the Court addressed the ACCA force clause and concluded that it does not include reckless conduct. 141 S. Ct. at 1821-22 (plurality opinion); *id.* at 1835 (Thomas, J., concurring). The ACCA force clause defines "violent felony" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The plurality held that the statutory language "use of physical force against the person of another" excludes reckless conduct. *Borden*, 141 S. Ct. at 1825. Justice Thomas supplied the fifth vote, basing his conclusion on the "use of force" language alone. *Id.* at 1834-37 (Thomas, J., concurring). Because the ACCA force clause is materially identical to the § 924(c) force clause at issue here, *Borden* applies to both. *See id.* at 1827 (plurality opinion) (finding that the ACCA force clause was "materially identical" to the 18 U.S.C. § 16(a) force clause); *see also McCoy*, 960 F.3d at

13

489-90 (finding "no material difference" between ACCA's force clause and the § 924(c) force clause).[4]

Borden did not address whether heightened forms of recklessness (like depraved heart recklessness) qualify under the force clause, but a careful review of its analysis and reasoning is useful here. The Borden plurality set out the four mental states in modern criminal law: purpose, knowledge, recklessness, and negligence. Id. at 1823 (plurality opinion). The first two, purpose and knowledge, are "the most culpable levels" in the mental state hierarchy. Id. "A person acts purposefully when he consciously desires a particular result." Id. (internal quotation omitted). "He acts knowingly when he is aware that [a] result is practically certain to follow from his conduct, whatever his affirmative desire." Id. (internal quotation omitted). The Court recognized little distinction between purposeful and knowing conduct, explaining, "[a] person who injures another knowingly, even though not affirmatively wanting the result, still makes a deliberate choice with full awareness of consequent harm." Id.

---

[4] The § 924(c) and § 16(a) force clauses differ from the ACCA force clause only in that they cover the use of physical force against the person *or property* of another. Otherwise, the three clauses are virtually identical. *Compare* 18 U.S.C. § 16(a) (defining "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another") *and* 18 U.S.C. § 924(c)(3)(A) (defining "crime of violence" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another") *with* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

14

The "less culpable mental states" are recklessness and negligence. *Id.* at 1824. These "involve insufficient concern with a risk of injury." *Id.* A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Id.* (cleaned up). The level of risk "need not come anywhere close to a likelihood." *Id.* As an example, "[s]peeding through a crowded area may count as reckless even though the motorist's 'chances of hitting anyone are far less [than] 50%.'" *Id.* (quoting 1 W. LaFave, Substantive Criminal Law § 5.4(f) (2018)). Finally, a person acts negligently "if he is not but should be aware of such a substantial and unjustifiable risk . . . in gross deviation from the norm." *Id.* (cleaned up).

After closely examining the text of the force clause, the plurality concluded that the force clause does not encompass reckless conduct. *Id.* at 1825. "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id.* "Reckless conduct is not aimed in that prescribed manner." *Id.* The plurality explained that because reckless conduct is "not opposed to or directed at another," it does not constitute the use of "force 'against' another person in the targeted way" the force clause requires. *Id.* at 1827. As an example, while a driver who "drives his car straight at a reviled neighbor, desiring to hit him" or who "sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over," has consciously deployed the use of physical force against

15

another person, a merely reckless driver has not. *Id.* at 1826-27. As the plurality explained, "[i]magine a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see." *Id.* at 1827. This driver has "consciously disregarded a real risk, thus endangering others" and he has made physical contact with another person, but he "has not directed force at another." *Id.* "He has not trained his car at the pedestrian understanding he will run him over." *Id.* "[H]is fault is to pay insufficient attention to the potential application of force." *Id.* In short, the force clause "covers purposeful and knowing acts, but excludes reckless conduct . . . ." *Id.* at 1826.

Justice Thomas reached the same conclusion, but based on the word "use" alone:

> I rest my analysis instead on a separate phrase: "use of physical force." As I have explained before, a crime that can be committed through mere recklessness does not have as an element the "use of physical force" because that phrase has a well-understood meaning applying only to intentional acts designed to cause harm.

*Id.* at 1835 (Thomas, J., concurring) (internal quotation omitted). While Justice Thomas believed that the ACCA residual clause should not have been declared unconstitutionally vague, his opinion is clear that reckless conduct does not satisfy the remaining force clause. *Id.* at 1836.

Turning back to the federal voluntary manslaughter statute, Brewer acknowledges that the *Borden* plurality expressly reserved the question of whether

16

mental states like "depraved heart" or "extreme recklessness," which fall between recklessness and knowledge, qualify under the force clause. *Id.* at 1825 n.4 (plurality opinion). But both the plurality's reasoning and Justice Thomas's reasoning make clear that the statutory language requires a conscious targeting of force that can only be satisfied by purposeful or knowing conduct, and not by any form of recklessness, including the level of depraved heart recklessness required for voluntary manslaughter. Indeed, Justice Kavanaugh acknowledged that "[u]nder the Court's decision [in *Borden*], even second-degree murder and some forms of manslaughter may be excluded from ACCA." *Id.* at 1856 (Kavanaugh, J., dissenting). "That is because, in many States, some forms of second-degree murder and manslaughter do not require intent or knowledge." *Id.*[5]

The *Borden* plurality found that reckless conduct does not qualify as the use of force against the person of another because it is not "opposed to" or "directed at" at another. *Id.* at 1827 (plurality opinion). The same goes for depraved heart conduct. While this mental state is generally understood to require disregard of a "very high degree" of risk, "it is still something far less than certainty or substantial certainty." *See*

---

[5] Nevertheless, Justice Kavanaugh noted that *Borden* should not be construed to express any view on whether offenses that can be committed with extreme recklessness fall under the force clause. 141 S. Ct. at 1856 n.21. In his view, "crimes committed with extreme recklessness, such as depraved-heart murder, should obviously still qualify as predicate offenses under ACCA, even after today's decision." *Id.*

Appellate Case: 22-3452     Page: 25     Date Filed: 03/02/2023 Entry ID: 5250783

Wayne R. LaFave, 2 Substantive Criminal Law § 14.4(a) (3d ed. Oct. 2022 update) (discussing second-degree murder). In contrast to the purposeful or knowing conduct that qualifies under the force clause, depraved heart recklessness falls short of "a deliberate choice with *full awareness* of consequent harm." *See Borden*, 141 S. Ct. at 1823 (plurality opinion) (emphasis added). It also falls short of being an "intentional act[] *designed to cause harm*." *Id.* at 1835 (Thomas, J., concurring) (emphasis added) (quoting *Voisine*, 136 S. Ct. at 2279, 2290 (Thomas, J., dissenting)).

A review of conduct that violates the federal voluntary manslaughter and second-degree murder statutes illustrates this point. The federal voluntary manslaughter statute can be violated by dangerous driving. *See, e.g.*:

- ***United States v. Chambers*, 898 F.2d 148 (table), No. 88–5653, 1990 WL 29160, at \*1 (4th Cir. Mar. 5, 1990)** (per curiam) (unpublished) (sentencing appeal in voluntary manslaughter case that stemmed from an automobile accident where the defendant drove between 100 and 110 miles per hour, failed to stop at two stop signs and a red light, collided with a Navy Exchange van, had a blood alcohol level of .218, and had a suspended driver's license for a prior DUI).

Similarly, several circuits have upheld federal second-degree murder convictions for fatal collisions caused by reckless and drunk driving. These cases are instructive here because second-degree murder (like voluntary manslaughter) can be committed with a mental state of depraved heart recklessness. *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978) (per curiam); *United States v. Serawop*, 410 F.3d 656, 666 (10th Cir. 2005) ("Voluntary manslaughter requires proof beyond a reasonable doubt that the

18

defendant acted, while in the heat of passion or upon a sudden quarrel, with a mental state that would otherwise constitute second degree murder—either a general intent to kill, intent to do serious bodily injury, or with depraved heart recklessness."). *See, e.g.*:

- ***United States v. Fleming*, 739 F.2d 945, 947-48 (4th Cir. 1984)** (finding sufficient evidence of malice where highly intoxicated defendant drove at high rate of speed, lost control of the vehicle, and struck another vehicle head-on);

- ***United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995)** (finding sufficient evidence of malice where defendant drove while under the influence of alcohol and a prescription drug that caused drowsiness and engaged in consistently dangerous driving leading up to a collision);

- ***United States v. Chippewa*, 141 F.3d 1180 (table), No. 97-30160, 1998 WL 123150, at \*1 (9th Cir. Mar. 17, 1998) (unpublished)** (finding sufficient evidence of extreme reckless disregard for human life to show malice aforethought where defendant drove while intoxicated, ignored two stop signs, collided with another vehicle, and had multiple prior alcohol-related driving incidents from which it could be inferred he knew yet disregarded the dangers of driving while intoxicated).

The same type of conduct has been found sufficient to establish the malice aforethought element of second-degree murder in the context of evidentiary issues and application of the Sentencing Guidelines. *See, e.g.*:

- ***United States v. Merritt*, 961 F.3d 1105, 1118 (10th Cir. 2020)** (finding, in the context of declaring a potential evidentiary error harmless, that malice aforethought was clearly established by evidence of past drunk-driving incidents and that defendant drove while intoxicated in the wrong lane and crashed into another vehicle);

19

- ***United States v. Lemus-Gonzalez*, 563 F.3d 88, 93 (5th Cir. 2009)** (finding no error in applying cross-reference to second-degree murder guideline under USSG § 2L1.1(c)(1) where defendant drank a substantial amount of alcohol before transporting undocumented persons in an SUV, the passengers were not wearing safety restraints, an infant was being held in the arms of an adult, the number of passengers exceeded the maximum capacity of the vehicle, and the defendant engaged in a high-speed chase before losing control of the vehicle).

The conduct in these cases, while egregious, does not rise to the level of the use of "force 'against' another person in the *targeted* way" the force clause requires. *See Borden*, 141 S. Ct. at 1827 (plurality opinion) (emphasis added). Instead, this conduct is much closer to the unsafe and drunk driving examples the *Borden* plurality found should *not* fall under the force clause—running a stop sign, veering onto the sidewalk, text messaging while driving, drunk driving, and speeding to a crime scene in a patrol car without the siren on. *Id.* at 1831. Just as in the examples in *Borden*, "[a]ll the defendants in [these] cases just described acted recklessly, taking substantial and unjustified risks." *Id.* "And all the defendants hurt other people, some seriously, along the way." *Id.* "But few would say their convictions were for 'violent felonies,'" *id.*, or as relevant here, "crimes of violence." These examples show that voluntary manslaughter and other offenses that can be committed with depraved heart recklessness encompass conduct that does not require the use of force against the person of another.

While it may be tempting to dismiss the significance of these examples because reckless and drunk driving homicides are unlikely to involve a firearm, the question

20

before the Court under the categorical approach is whether voluntary manslaughter qualifies as a "crime of violence" under § 924(c)(3)(A) in all cases, not just those involving prosecution for the use of a firearm under § 924(c)(1). In other words, while a prosecution under § 924(c)(1) will always involve a firearm (because this is a separate element of the offense), the definition of "crime of violence" in § 924(c)(3) applies to dozens of federal criminal statutes. *See Davis*, 139 S. Ct. at 2329-30. Many of these statutes have nothing to do with firearms. The definition of "crime of violence" in § 924(c)(3) applies, for example, to using false identification documents in connection with a crime of violence, 18 U.S.C. § 1028(b)(3)(B), and to using armor piecing ammunition in connection with a crime of violence, 18 U.S.C. § 924(c)(5). For voluntary manslaughter to qualify as a "crime of violence" under the § 924(c) force clause, all conduct covered by the statute must qualify, not just conduct that involves a firearm. After all, "[a]n offense does not qualify as a [crime of violence] unless the *least serious conduct* it covers falls within the elements clause." *Borden*, 141 S. Ct. at 1832 (emphasis added). In the case of voluntary manslaughter, it does not.

The district court found that voluntary manslaughter requires an "intentional killing." App. 70-71; Civ. R. Doc. 21, at 13-14; *see also Wakaksan v. United States*, 367 F.2d 639, 645 (8th Cir. 1966) (describing voluntary manslaughter as "an unlawful, intentional killing committed without malice aforethought"). To be clear, while the defendant's actions must have been volitional, the minimum mental state for

21

voluntary manslaughter is depraved heart recklessness. *See McCoy*, 960 F.3d at 489. As the Fourth Circuit explained a drunk driving second-degree murder case, "the government need only have proved that defendant intended to operate his car in the manner in which he did with a heart that was without regard for the life and safety of others." *Fleming*, 739 F.2d at 948. Even under the strongest formulations of voluntary manslaughter, this offense can be committed with a less culpable mental state than the intentional, purposeful, or knowing mental state required by the force clause.

Indeed, before *Borden*, this Court addressed a state statute that could be violated by extreme recklessness and found that it did not qualify as the use, attempted use, or threatened use of physical force under the similarly worded force clause in USSG § 4B1.2(a)(1). In *United States v. Boose*, the Court considered an Arkansas battery statute that could be committed by causing physical injury to another person "under circumstances exhibiting extreme indifference with a reckless state of mind." 739 F.3d 1185, 1187-88 (8th Cir. 2014).[6] The Court held that because the statute encompassed reckless driving resulting in injury, it did not qualify under the force clause. *Id.* Further, it made no difference that the statute required that the defendant manifest "extreme indifference to the value of human life":

---

[6] *Boose* has remained good law through the shifting status of reckless conduct under the force clause. *See United States v. Schneider*, 905 F.3d 1088, 1092 (8th Cir. 2018) (discussing the circuit's reckless driving line of cases).

22

> While it remains true a conviction for first-degree battery under § 5–13–201(a)(3) requires a defendant manifest "extreme indifference to the value of human life," Arkansas law establishes the first-degree battery statute can be violated with a mental state of recklessness. As a result, a conviction for battery in the first degree under § 5–13–201(a)(3) is not a qualifying crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1).

*Id.* at 1188. *Boose* is instructive here because it held that in a context where simple recklessness falls outside the force clause, the fact that a statute requires "extreme indifference to the value of human life" does not bring that statute back within the reach of the force clause. The same reasoning should apply to voluntary manslaughter, which, as set forth above, can be committed by drunk or dangerous driving with a mental state of depraved heart recklessness.

Brewer is unaware of any post-*Borden* circuit court opinions addressing whether voluntary manslaughter qualifies as a "crime of violence" under the force clause. He acknowledges that a number of circuits have found that second-degree depraved-heart murder qualifies under the force clause even after *Borden*. *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022) (Kentucky complicity to commit murder); *United States v. Manley*, 52 F.4th 143, 150-51 (4th Cir. 2022) (Virginia second-degree murder); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1343-45 (11th Cir. 2022) (Georgia malice murder and federal murder); *United States v. Begay*, 33 F.4th 1081, 1086 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 340 (2022) (federal second-degree murder); *United States v. Solís-Vásquez*, 10 F.4th 59, 65 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 833

23

(2022) (Massachusetts second-degree murder) (applying pre-*Borden* opinion in *United States v. Báez-Martínez*, 950 F.3d 119 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2805 (2021), *reh'g denied*, 142 S. Ct. 922 (2021)). These opinions are not binding on this Court, they do not take into account this Court's finding in *Boose* that there is no distinction between extreme and ordinary recklessness under the force clause, and they do not address Brewer's additional argument that voluntary manslaughter encompasses certain prenatal conduct as set forth in more detail in Section B, *infra*.

Under the rationale of *Borden*, federal voluntary manslaughter falls outside the force clause because it encompasses depraved heart recklessness. While voluntary manslaughter qualified as a "crime of violence" under the now-invalidated residual clause, it does not qualify under the remaining force clause.

B.    **Voluntary manslaughter encompasses prenatal conduct, which is not conduct "against the person . . . of another" within the meaning of § 924(c)(3)(A).**

Federal voluntary manslaughter is overbroad for a second reason. It does not necessarily require "the use, attempted use, or threatened use of physical force against the *person* . . . of another" because it can be committed by certain prenatal acts, which

24

by definition are acts before there is another "person" within the meaning of federal law.[7]

This issue involves the complex interplay between the language of the § 924(c) force clause, the federal definition of "person," and judicial interpretation of the phrase "the unlawful killing of a human being" in the federal voluntary manslaughter statute.

**Section 924(c)(3)(A):** The § 924(c) force clause requires that the offense have "as an element the use, attempted use, or threatened use of physical force *against the person* or property *of another*." 18 U.S.C. § 924(c)(3)(A) (emphasis added). The key phrase for this issue is "against the person . . . of another."

**Federal definition of "person":** The term "person" is defined under federal law to exclude unborn children. Under the Dictionary Act, the term "person" has the same meaning throughout the federal code:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the words "person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development.

1 U.S.C. § 8(a). "Born alive," in turn, means:

---

[7] As discussed in more detail at the end of this section, Brewer respectfully submits that this Court's pre-*Borden* rejection of this argument in *McCoy*, 960 F.3d at 490, is not binding here. In the event that it is, Brewer raises the argument to preserve it for further review.

the complete expulsion or extraction from his or her mother of [a member of the species homo sapiens], at any stage of development, who after such expulsion or extraction breathes or has a beating heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, regardless of whether the umbilical cord has been cut, and regardless of whether the expulsion or extraction occurs as a result of natural or induced labor, cesarean section, or induced abortion.

1 U.S.C. § 8(b). "Under a literal reading of the statute, the term 'person' does not include fetuses." *United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011).

**"Unlawful killing of a human being":** Finally, turning back to the federal manslaughter statute, manslaughter is defined as "the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). The term "human being" has the same meaning as "person." 1 U.S.C. § 8(a). This Court interpreted the phrase "the unlawful killing of a human being" in the context of an involuntary manslaughter prosecution and found that it encompasses a pregnant person's prenatal conduct so long as it results in the death of a later-born infant. *United States v. Flute*, 929 F.3d 584 (8th Cir. 2019). In *Flute*, the defendant was charged with involuntary manslaughter based on prenatal drug use that was alleged to have resulted in the death of her infant child shortly after birth. *Id.* at 586. The defendant moved to dismiss the indictment, arguing that § 1112 did not reach her prenatal conduct because an unborn child was not a "human being" within the meaning of federal law. *Id.* This Court found that § 1112 covered the defendant's conduct because the infant was "born alive" before dying:

Under this definition [of "human being" in § 8(a) and (b)], the uncontested fact that Baby Boy Flute survived for several hours after his

26

birth—complete expulsion or extraction from his mother—until succumbing to the drugs in his system would establish that he was "born alive." Because he was born alive, under the plain language of these statutes, Baby Boy Flute was a "human being." *And because the language of the manslaughter statute plainly encompasses the death of a born-alive child—a child at the earliest possible moment that it exists outside of the womb—the statute necessarily extends to conduct that occurred in utero and caused death to this born-alive child.* Baby Boy Flute's death and Flute's conduct while pregnant thus fall within the ambit of the involuntary manslaughter statute.

*Id.* at 588 (emphasis added). The Court noted that its conclusion was consistent with the common law "born alive" rule, under which liability for a homicide "extended to the death of a child born alive related to injuries received in utero." *Id.* (citing *United States v. Spencer*, 839 F.2d 1341, 1343 (9th Cir. 1988)). While *Flute* was an involuntary manslaughter case, it interpreted the same statutory language—"the unlawful killing of a human being"—that applies to voluntary manslaughter. *See* 18 U.S.C. § 1112(a). Nothing in *Flute*'s interpretation of the phrase "human being" depended on the difference between involuntary and voluntary manslaughter.

Putting these statutory provisions together, the federal manslaughter statute reaches purely prenatal conduct, which is by definition conduct that takes place *before* there is another "person" under federal law. The § 924(c) force clause requires that the offense have as an element the use, attempted use, or threatened use of physical force "against the . . . person of another." Because an unborn child is not a "person" within the meaning of federal law, a pregnant person's prenatal conduct does not

27

qualify as the use of force "against the person . . . of another" because there was not another "person" at the time of the use, attempted use, or threatened use of force.

This is true even though the victim must be born alive before dying for the offense to fall under the federal manslaughter statute. While the presence of a born-alive victim may be enough to constitute a completed manslaughter, the force clause requires more. In other words, the use of "force" when there was no "person" to use it "against" cannot qualify under the force clause. *Borden* repeatedly emphasized that to qualify under the force clause, the force must be actively employed *against another person*:

- "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." 141 S. Ct. at 1825 (plurality opinion).

- "[A reckless driver] has not used force 'against' another person in the targeted way that clause requires." *Id.* at 1827.

- "Offenses with a *mens rea* of recklessness . . . do not require, as ACCA does, the active employment of force against another person." *Id.* at 1834.

It is not enough under the force clause for there to eventually be another person within the meaning of federal law. Under a straightforward application of the text of § 924(c)(3)(A), there can be no qualifying use of force against the person of another if there was no other "person" at the time of the use of force. Because the federal

28

voluntary manslaughter statute covers a pregnant person's prenatal conduct, it does not qualify as a "crime of violence" under the § 924(c) force clause.

Brewer acknowledges that this Court rejected this argument in *McCoy*. 960 F.3d at 490 ("Finally, McCoy cites [*Flute*] for the proposition that manslaughter can be committed without the use of force 'against the person' of another, because *Flute* held that a woman could be convicted of manslaughter based on actions that harmed an unborn child. *Flute*, however, involved a charge of involuntary manslaughter, so it does not speak to whether McCoy's discrete offense of *voluntary* manslaughter is a crime of violence.") (internal citation omitted). Brewer respectfully submits that *McCoy*'s rejection of this argument is not binding here. *McCoy* was decided before *Borden* and did not address this argument with the benefit of *Borden*'s emphasis on the "against the person . . . of another" language of the force clause. *See Borden*, 141 S. Ct. at 1825, 1827, 1834 (plurality opinion). If the Court finds that it is bound by *McCoy* on this point, Brewer raises the argument here to preserve it for further review. Regardless of the Court's resolution of this issue, voluntary manslaughter remains overbroad because it can be committed by less than purposeful or knowing conduct. *See* Section A, *supra*.

## CONCLUSION

At the time of Brewer's conviction, voluntary manslaughter qualified as a "crime of violence" under the § 924(c) residual clause. *Davis* invalidated this clause as

Appellate Case: 22-3452    Page: 37    Date Filed: 03/02/2023 Entry ID: 5250783

void for vagueness in violation of the Due Process Clause. Voluntary manslaughter does not qualify as a "crime of violence" under the remaining § 924(c) force clause. As a result, Brewer's conviction and sentence for discharge of a firearm during the commission of a "crime of violence" were imposed in violation of his due process rights, and the district court erred in denying his § 2255 motion. Brewer asks that the Court reverse the order denying his § 2255 motion and vacate his conviction and sentence for the § 924(c) offense.

Dated this 27th day of February, 2023.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

_____ /s/   Molly C. Quinn_____
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Main Avenue, Suite 400
Sioux Falls, SD 57104
Phone: (605) 330-4489
Fax: (605) 330-4499
Ecf8_sf@fd.org

Appellate Case: 22-3452     Page: 38     Date Filed: 03/02/2023 Entry ID: 5250783

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses using Symantec Anti Virus Corporate Edition, and that the scan showed the electronic version of the foregoing is virus-free.

*/s/ Molly C. Quinn*
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer

31

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,821 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Garamond font.

Dated this 27th day of February, 2023.

_____/s/_  *Molly C. Quinn*_____
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer

Appellate Case: 22-3452     Page: 40     Date Filed: 03/02/2023 Entry ID: 5250783