# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 22-3452


THOMAS JOSEPH BREWER,

Petitioner - Appellant,

vs.

UNITED STATES OF AMERICA,

Respondent - Appellee.


Appeal from the United States District Court
for the District of South Dakota
Western Division

---

# APPELLEE'S BRIEF

---

ALISON J. RAMSDELL
UNITED STATES ATTORNEY
Kevin Koliner
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Telephone: (605) 330-4400
*Attorneys for Appellee*

## SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT

Thomas Brewer pleaded guilty in May 2017 to voluntary manslaughter (18 U.S.C. §§ 1112 and 1153) and discharging a firearm during the commission of a crime of violence (18 U.S.C. § 924(c)(1)(A)(iii)).  He challenges his § 924(c) conviction following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), claiming that federal voluntary manslaughter is no longer a valid § 924(c) predicate.  This Court decided that question post-*Davis*, holding that federal voluntary manslaughter remains a qualifying predicate.  *McCoy v. United* States, 960 F.3d 487 (8th Cir. 2020).  But Brewer claims that the Supreme Court's later decision, *Borden v. United States*, 141 S. Ct. 1817 (2021), invalidated voluntary manslaughter even though the Supreme Court denied certiorari review of *McCoy* in the days after it decided *Borden*.  *McCoy*, 141 S. Ct. 2819 (2021).

Voluntary manslaughter still qualifies as a § 924(c) "crime of violence." While *Borden* invalidated ordinary recklessness offenses, the Justices expressly withheld assessment of crimes like voluntary manslaughter that require "depraved heart" or "extreme recklessness."  Without a mandate from the Supreme Court, this panel is bound by its prior decision.

The government respectfully submits that the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument.

Appellate Case: 22-3452     Page: 2     Date Filed: 05/17/2023 Entry ID: 5277822

# TABLE OF CONTENTS

SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT ................i

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................2

I.   WHETHER FEDERAL VOLUNTARY MANSLAUGHTER REMAINS A VALID § 924(c)(3)(A) PREDICATE OFFENSE.................2

STATEMENT OF THE CASE ..............................................................2

    A.   Factual Background ...............................................................2
    B.   Procedural Background ..........................................................3
    C.   The District Court's Memorandum and Order .........................5

SUMMARY OF THE ARGUMENT .....................................................6

ARGUMENT .....................................................................................7

I.   FEDERAL VOLUNTARY MANSLAUGHTER REMAINS A VALID § 924(c)(3)(A) PREDICATE OFFENSE .........................7

    A.   Standard of Review ...............................................................7
    B.   Federal Voluntary Manslaughter Requires a Level of Intent Higher Than Ordinary Recklessness .............................8
    C    *McCoy* Remains Binding Precedent .......................................9
    D.   Voluntary Manslaughter Meets the Criteria That Force Must Be Directed "Against the Person…of Another" Within the Meaning of § 924(c)(3)(A) ...............................17
    E.   Brewer's Reliance on *United States v. Flute* Should Be Rejected Because Its Focus Was on a Critically Different Statute and Its Holding is Being Misconstrued ...........................20

CONCLUSION .................................................................................23

CERTIFICATE OF COMPLIANCE ...................................................24

CERTIFICATE OF SERVICE ...........................................................25

Appellate Case: 22-3452     Page: 3     Date Filed: 05/17/2023 Entry ID: 5277822

# TABLE OF AUTHORITIES

**CASES:**                                                                         **PAGE:**

*Alvarado-Linares v. United States*, 44 F.4th 1334 (11th Cir. 2022) ......................13

*Borden v. United States,* No. 19-5410, 2020 WL 981806 (March 2, 2020)..........2, 4

*Borden v. United States*, 141 S. Ct. 1817 (2021).................... 2, 4-7, 9-13, 15, 17-23

*Johnson v. United States,* 559 U.S. 133 (2010) ......................................................22

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ...................................................................11

*McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2819
    (2021)......................................................................2, 5-10, 12, 16, 18, 20-23

*Owsley v. Luebbers,* 281 F.3d 687 (8th Cir. 2002)....................................................9

*United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020), *cert. denied,* 141 S.
    Ct. 2805 (2021)...............................................................................13, 19

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022)(en banc)...2, 5, 13, 17, 18, 19

*United States v. Boose,* 739 F.3d 1185 (8th Cir. 2014) ....................................14, 15

*United States v. Castleman*, 572 U.S. 157 (2014) ............................................11, 22

*United States v. Chippewa,* 141 F.3d 1180, 1998 WL 123150 (9th Cir. 1998) ......14

*United States v. Davis*, 139 S. Ct. 2319 (2019) ....................................................3, 4

*United States v. Fleming,* 739 F.2d 945 (2d Cir. 1984)...........................................13

*United States v. Flute,* 929 F.3d 584 (8th Cir. 2019)........................... 2, 5, 7, 20-23

*United States v. Fogg,* 836 F.3d 951 (8th Cir. 2016)..........................................9, 10

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022) .........................................13

*United States v. Manley,* 52 F.4th 143 (4th Cir. 2022)............................................13

*United States v. Ossana*, 638 F.3d 895 (8th Cir. 2011) ..........................................15

*United States v. Ramey*, 880 F.3d 447 (8th Cir. 2018 ............................................15

*United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005)........................................8

*United States v. Sheffey,* 57 F.3d 1419 (6th Cir. 1995) ..........................................14

*United States v. Solis-Vasquez*, 10 F.4th 58 (1st Cir. 2021)....................................13

Appellate Case: 22-3452     Page: 4     Date Filed: 05/17/2023 Entry ID: 5277822

*United States v. Steward*, 880 F.3d 983 (8th Cir. 2018)............................................8

*United States v. Thompson,* 2022 WL 138524 (D. MN. Jan. 14, 2022)....................4

*United States v. Winston*, 845 F.3d 876 (8th Cir. 2017)....................................22, 23

*Voisine v. United States*, 579 U.S. 686 (2016) ......................................................9, 15

*Wakaksan v. United States,* 367 F.2d 639 (8th Cir. 1966)..................................8, 19

## STATUTES:

18 U.S.C. § 924(c)(1)(A)(iii) ...........................................3, 9, 10, 15, 16

18 U.S.C. § 924(c)(3)(A) ............................... 6, 7, 11, 16, 17, 20, 21

18 U.S.C. § 924(c)(3)(B) ....................................................................4

18 U.S.C. § 924(e)(2)(B) ..............................................................11, 21

18 U.S.C. § 1112(a) ...........................................................3, 7, 8, 9

18 U.S.C. § 1151 .................................................................................3

18 U.S.C. § 1153 .................................................................................3

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 2253 .................................................................................1

28 U.S.C. § 2255 .................................................................................1

## OTHER AUTHORITIES:

Model Penal Code § 210.3(1)(b) .........................................................8

U.S.S.G. § 4B1.1(a) ...........................................................................14

Wayne R. LaFave, *Substantive Criminal Law* § 15.2(a) (3d ed. 2017)....................8

iv

# JURISDICTIONAL STATEMENT

Brewer appeals the district court's order granting the government's motion to dismiss and denying his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. App. 58-71 Civ. R. Doc. 21.[1] The district court had jurisdiction under 28 U.S.C. § 2255, and this Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

The district court entered its judgment of dismissal on May 13, 2022. App. 72 Civ. R. Doc. 22. It later granted a certificate of appealability on November 1, 2022. App. 73-78 Civ. R. Doc. 23. Brewer filed a timely notice of appeal on November 10, 2022. App. 79 Civ. R. Doc. 24.

---

[1] References to filings in the civil case (No. 5:20-cv-05042-LLP) will be to "Civ. R. Doc." followed by the relevant docket number. References to the underlying criminal case (No. 5:16-cr-50174-JLV) will be to "Cr. R. Doc." followed by the relevant docket number. Parallel citations to the Joint Appendix will be to "App." followed by the page number. References to Appellant's Brief will be cited as "AB" followed by the page number.

Appellate Case: 22-3452     Page: 6     Date Filed: 05/17/2023 Entry ID: 5277822

## STATEMENT OF THE ISSUES

**I.  WHETHER FEDERAL VOLUNTARY MANSLAUGHTER REMAINS
A VALID § 924(c)(3)(A) PREDICATE OFFENSE.**

*McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020), *cert. denied*, 141 S. Ct.
2819 (2021)
*Borden v. United States,* 141 S. Ct. 1817 (2021)
*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc)
*United States v. Flute*, 929 F.3d 584 (8th Cir. 2019)

## STATEMENT OF THE CASE

### A.  Factual Background.

In the factual basis statement supporting his guilty plea, Brewer admitted that

in the early morning of November 30, 2016, he was driving a vehicle in Pine Ridge,

South Dakota, when he was approached by Shawn Stevens because Stevens believed

Brewer hit his car while spinning out on a snowy road outside Stevens' trailer.  App.

100 Cr. R. Doc. 51.  The two men got into an argument, then Brewer and the other

occupants of his vehicle drove up the street and parked, while Stevens remained in

the street.  Brewer and his occupants began walking back down the street toward

Stevens, and Brewer and Stevens resumed shouting at each other.  *Id*. at App. 100-

01.  Brewer produced a 9mm semi-automatic pistol, and he fired one round at

Stevens from about 45-50 feet away.  *Ibid*.  The round struck Stevens in the

abdomen, and it punctured his liver, pancreas, and inferior vena-cava.  *Ibid*.  He was

rushed to a local hospital, then airlifted to Rapid City Regional Hospital, but he died

from the gunshot.  *Ibid*.

Brewer admitted that he is an "Indian," and that the offense occurred in "Indian country" as those terms are used in 18 U.S.C. §§ 1151 and 1153. *Ibid.*

## B. Procedural Background.

Brewer entered his guilty pleas on May 9, 2017, to two counts in a Superseding Felony Information (App. 103 Cr. R. Doc. 52): Voluntary Manslaughter in Indian country, a violation of 18 U.S.C. §§ 1112 and 1153, and Discharge of a Firearm During the Commission of a Crime of Violence, a violation of 18 U.S.C. § 924(c)(1)(A)(iii). App. 92-99 Cr. R. Doc. 49 (Plea Agreement). The parties' agreement allowed the government to recommend a sentence anywhere within the statutory limit. App. 96 Cr. R. Doc. 49, at 5.

Brewer was sentenced in October 2017 to 97 months in custody for the voluntary manslaughter count and to 120 consecutive months on the firearms count. He was also ordered to serve concurrent terms of 3 years of supervised release on the manslaughter count, 5 years on the firearms count, and to pay restitution. App. 110-16 Cr. R. Doc. 78 (Judgment). Brewer filed a notice of appeal, but the government filed a motion to dismiss based on the appeal waiver in the plea agreement. *See United States v. Brewer*, Case No. 17-3294 (8th Cir. 2017). A judgment dismissing the appeal was filed in December 2017, and a mandate issued in January 2018. *Ibid*.

3

Brewer moved to vacate his § 924(c) conviction following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). App. 1-3 Civ. R. Doc. 1. He argued that his firearm conviction, premised on federal voluntary manslaughter, depended on the residual clause in § 924(c)(3)(B), and *Davis* invalidated that clause. App. 2 Civ. R. Doc. 1, at 2; App. 4-10 Civ. R. Doc. 2.

On the government's motion, the matter was placed in abeyance because the Supreme Court granted a writ of certiorari as to one of the questions raised in *Borden v. United States*, No. 19-5410, 2020 WL 981806 (March 2, 2020). App. 11-12 Civ. R. Doc. 4; App. 13-15 Civ. R. Doc. 5; App. 16-18 Civ. R. Doc. 6. That was whether a criminal offense that can be committed with a mens rea of recklessness qualifies as a "violent felony" under the Armed Career Criminal Act. The Court issued its opinion in *Borden* on June 10, 2021, and, by a vote of 5-4 including the concurrence by Justice Thomas, it concluded that crimes that can be committed through ordinary recklessness do not satisfy ACCA's elements clause. *Borden v. United States*, 141 S. Ct. 1817 (2021).

The district court then lifted the abeyance and ordered the government to respond to Brewer's motion, which it did with a motion to dismiss, an answer, and a responsive memorandum. App. 19 Civ. R. Doc. 9. Brewer responded. App. 36-48 Civ. R. Doc. 16. The government filed a supplemental response informing the court of a decision favoring its views in *United States v. Thompson*, 2022 WL

4

138524 (D. MN. Jan. 14, 2022).  App. 49-50 Civ. R. Doc. 17.  Brewer responded.

App. 51-54 Civ. R. Doc. 19.  Brewer also informed the court when the decision

adverse to his position was issued in *United States v. Begay*, 33 F.4th 1081 (9th Cir.

2022) (en banc).  App. 55-57 Civ. R. Doc. 20.

### C.    The District Court's Memorandum and Order.

On September 13, 2022, the district court issued a detailed memorandum and

order rejecting Brewer's arguments and granting the government's motion to

dismiss.  App. 58-71 Civ. R. Doc. 21.  The district court observed that the *Borden*

four-justice plurality, along with Justice Thomas's concurrence, held that a

qualifying predicate felony must have a more intentional mens rea than mere

recklessness.  App. 63-65 Civ. R. Doc. 21, at 6-8.  But *Borden* did not invalidate

federal voluntary manslaughter with its mens rea of "extreme recklessness or

depraved heart."  App. 65 Civ. R. Doc. 21, at 65.  The district court noted that the

Justices in *Borden* did not resolve the question of whether "depraved heart" reckless

offenses continue to qualify as violent crimes.  App. 65-66 Civ. R. Doc. 21, at 8-9.

It held that *Borden* did not alter or diminish this Court's binding precedent in *McCoy*

*v. United States*, 960 F.3d 487, 488 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2819

(June 21, 2021), which held that federal voluntary manslaughter qualifies as a

violent-crime predicate for 18 U.S.C. § 924(c), and also rejected the argument that

*United States v. Flute*, 929 F.3d 584 (8th Cir. 2019), bears on the question of whether

5

voluntary manslaughter is a qualifying offense.  App. 67-68 Civ. R. Doc. 21, at 10-11.

The district court also discussed various decisions from other courts post-*Borden*, and it agreed that reasoning supports finding that voluntary manslaughter, with a mens rea of extreme or depraved-heart recklessness, continues to satisfy the requirements of a crime of violence under § 924(c)(3).  App. 69-70 Civ. R. Doc. 21, at 12-13.

Brewer applied for a certificate of appealability with the district court and, following briefing by both parties (App. 73-78 Civ. R. Doc. 23; App. 80-85 Civ. R. Doc. 26), the district court granted Brewer's request, and this appeal followed.  App. 86-89 Civ. R. Doc. 27.

## SUMMARY OF THE ARGUMENT

The district court's order denying Brewer's § 2255 motion should be affirmed. The *Borden* plurality expressly reserved assessing whether offenses requiring a mens rea of "depraved heart" or "extreme recklessness" continue to qualify as predicates for ACCA, and by extension, for § 924(c)(3)(A).  The dissenting Justices were even more emphatic that such offenses remain valid.

Brewer recognizes that all the courts that have issued opinions on these questions following *Borden* have held that depraved-heart offenses remain valid § 924(c)(3)(A) predicates.  There is no basis in this Court's precedent for it to be the

6

first to stray from those courts' well-reasoned analyses and conclusions. This Court has long held that federal voluntary manslaughter requires a mens rea higher than ordinary recklessness, a conclusion firmly grounded in the history and language of § 1112. This panel is also bound by *McCoy* on precisely the same questions Brewer now raises, arriving to the Court in the same procedural posture. *Borden* did not abrogate *McCoy*. In fact, McCoy's petition for a writ of certiorari was pending before the Supreme Court when it decided *Borden*, and it was denied in the days following its issuance.

Finally, this Court's decision in *Flute* has no bearing on the question now before the Court, and the argument Brewer makes was correctly rejected by this Court in *McCoy*. *Flute* regarded federal *involuntary* manslaughter, a statute requiring a lower mens rea element. The conclusion in *Flute* does not allow for a manslaughter conviction for killing a non-human being; in fact, *Flute*'s outcome *depended* on Baby Boy Flute's status as a human being.

## **ARGUMENT**

## I. **FEDERAL VOLUNTARY MANSLAUGHTER REMAINS A VALID § 924(c)(3)(A) PREDICATE OFFENSE.**

### A. **Standard of Review.**

This Court reviews the legal question of whether a prior conviction qualifies as a "crime of violence" under § 924(c) de novo. *McCoy v. United States*, 960 F.3d 487, 489 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2819 (2021).

**B.    Federal Voluntary Manslaughter Requires a Level of Intent Higher Than Ordinary Recklessness.**

"Voluntary manslaughter occurs when a defendant acts upon a sudden quarrel or heat of passion, and with a mental state constituting 'a general intent to kill, intent to do serious bodily injury, or with depraved heart recklessness.'" *McCoy*, 960 F.3d at 489 (quoting *United States v. Serawop*, 410 F.3d 656, 666 (10th Cir. 2005); citing *United States v. Steward*, 880 F.3d 983, 987-88 (8th Cir. 2018); Wayne R. LaFave*, Substantive Criminal Law* § 15.2(a) (3d ed. 2017)).  There is a foundation for holding that voluntary manslaughter requires intent.  Brewer acknowledges (AB 21) that this Court has held that, to prove voluntary manslaughter under § 1112, "[a]n essential element of the prosecution's case was to establish that the appellant intentionally caused the death of the victim." *Wakaksan v. United States*, 367 F.2d 639, 645 (8th Cir. 1966).  This Court has also explained that "unlike involuntary manslaughter, which most often occurs when the defendant lacks the requisite mental state to commit homicide, 'voluntary manslaughter functions more like a partial defense to murder, describing conduct undertaken intentionally but in the 'heat of passion.'" *Steward*, 880 F.3d at 987 (quoting Wayne R. LaFave, *Substantive Criminal Law* § 15.4(a)).  *Steward* noted that "the Modern Penal Code has modernized the language, referring to 'a homicide which would otherwise be murder that is committed under the influence of extreme mental or emotional disturbance.'"  880 F.3d at 987; Model Penal Code § 210.3(1)(b).

8

In *McCoy*, this Court confronted the precise questions Brewer presents in this appeal and analyzed the mens rea element under a recklessness standard. There like here, a § 2255 petitioner argued that voluntary manslaughter did not qualify as a crime of violence for purposes of § 924(c)(1)(A), regarding one who uses a firearm during and in relation to a crime of violence. 960 F.3d at 488. McCoy urged that a conviction for voluntary manslaughter under § 1112 did not qualify because it could be committed through reckless conduct. *Ibid*. This Court analyzed and rejected that argument, relying on then-binding precedent in *United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016), which held that recklessness is a mens rea sufficient to qualify. *McCoy*, 960 F.3d at 489-90. Because the precedent at the time (namely, *Fogg* and *Voisine v. United States*, 579 U.S. 686 (2016)) discussed ordinary reckless, there was no occasion in *McCoy* to parse the differences between ordinary and depraved-heart recklessness offenses. Brewer states that "the minimum mental state required for voluntary manslaughter" is "depraved heart recklessness[.]" AB 9.

### C.     *McCoy* Remains Binding Precedent.

"It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002). Because of the four-corners match, Brewer's appeal depends entirely upon this Court now holding that *McCoy* is no longer binding precedent after the Supreme Court's

9

decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). There are several reasons why it should not.

First, the procedural path that *McCoy* took after this Court published its decision indicates that the Supreme Court does not consider *Borden* to have affected it. McCoy filed a writ of certiorari with the Supreme Court following the panel opinion. *See McCoy v. United States*, S. Ct. Docket No. 20-6788. While it was pending, the Supreme Court granted review in *Borden*. The parties urged that McCoy's case should be held pending the decision in *Borden*. *See*, *i.e.*, Docket No. 20-6788 at United States' Memorandum March 19, 2021 (conceding that "the possible inclusion of reasoning [in the then-yet-issued opinion in *Borden*] broad enough to sweep in even depraved-heart recklessness could implicate the court of appeals' resolution of this case, which relied on circuit precedent addressing ordinary recklessness.").

*Borden* was decided on June 10, 2021. McCoy's certiorari petition was distributed for conference on June 17, 2021, and his petition was denied on June 21, 2021. *See* Docket No. 20-6788. That post-*Borden* history, while perhaps not definitive, favors the view that *Borden* did not abrogate *McCoy*. For instance, *Borden* expressly abrogated *Fogg* (*see* 141 S. Ct. at 1823 n.1), yet McCoy's petition was also pending before the Court and considered in conference in the days after *Borden* was decided, and review was denied.

10

Second, *Borden*'s reasoning does not support the view that *McCoy* was abrogated. *Borden* and *Fogg* both involved the Armed Career Criminal Act and predicate offenses with a mens rea of mere recklessness, not depraved-heart recklessness and § 924(c). The *Borden* plurality explained that the mental states required for criminal convictions can be viewed as a continuum. In "descending order of culpability," that continuum includes "purpose, knowledge, recklessness, and negligence." *Borden*, 141 S. Ct. at 1823 (plurality). Crimes that can be committed either "purposefully" or "knowingly" generally involve the use of force against the person of another and thus are crimes of violence under § 924(c)(3)(A)'s elements clause and other similarly worded provisions. *See United States v. Castleman*, 572 U.S. 157, 170 (2014). By contrast, crimes that can be committed "negligently" generally do not involve the use of force against the person of another and thus are not "crime[s] of violence." *See Leocal v. Ashcroft*, 543 U.S. 1, 8-10 (2004).

In between the mental states of purpose and knowledge, on the one hand, and negligence on the other lies the mental state of recklessness. In *Borden*, the Supreme Court held that crimes involving a mens rea of ordinary recklessness—in that case, Tennessee reckless assault—do not involve the "'use'" of force "'against the person

11

of another.'" 141 S. Ct. at 1825 (plurality opinion of Kagan, J.); *see also id.* at 1835 (Thomas, J., concurring in the judgment).[2]

But the *Borden* plurality recognized that recklessness does not have a single fixed meaning, such that the general term "recklessness" also gets used to describe crimes requiring a heightened mens rea much closer to knowledge or intent. In a footnote, the plurality explicitly reserved the question of whether crimes with a mental state lying somewhere "between recklessness and knowledge," often referred to as "'depraved heart' or 'extreme recklessness,'" involve the use of force against the person of another. *Borden*, 141 S. Ct. at 1825 n.4. That reservation means lower courts were simply not directed to reach a conclusion that crimes of extreme recklessness no longer qualify as crime-of-violence felonies.

The dissenting Justices were even more emphatic. Justice Kavanaugh, joined by Chief Justice Roberts and Justices Alito and Barrett, observed that despite the plurality's holding regarding recklessness, extreme recklessness crimes "should obviously still qualify as predicate offenses under ACCA," noting that Borden's

---

[2] Both Justice Kagan's plurality opinion (for herself and three other Justices) and Justice Thomas's separate concurring opinion agreed that reckless offenses fall outside the definition of a "violent felony" in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B), which is identical in relevant respects to the definition of a "crime of violence" in § 924(c)(3)(A). But the opinions took different interpretive paths to reach that conclusion. The plurality rested its view on the phrase "against the person of another," while Justice Thomas rested his view on the phrase "use of force." Despite these differences in reasoning, five Justices voted to reverse the judgment on the ground that ordinary reckless offenses do not qualify.

Appellate Case: 22-3452     Page: 17     Date Filed: 05/17/2023   Entry ID: 5277822

counsel "acknowledged at oral argument that extreme recklessness crimes, such as depraved-heart murder, can still suffice under ACCA." *Id.* at 1856 n.21.

Brewer cites no post-*Borden* decisions from this Court or others that support his view that *Borden* abrogated cases like *McCoy* that have held that depraved-heart recklessness offenses are valid violent-crime predicates. All the United States Circuit Courts of Appeals that have decided this general question—whether heightened recklessness homicide offenses remain valid violent-crime predicates post-*Borden*—have sided with the government's view. *See United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 340 (2022) (federal second-degree murder); *United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) (Virginia second-degree murder); *Alvarado-Linares v. United States*, 44 F.4th 1334 (11th Cir. 2022) (Georgia malice murder and federal murder); *United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022) (Kentucky complicity to commit murder); *United States v. Solis-Vasquez*, 10 F.4th 59 (1st Cir. 2021), *cert. denied*, 1242 S. Ct. 833 (2022) (Massachusetts second-degree murder, applying pre-*Borden* opinion in *United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2805 (2021), *reh'g denied*, 142 S. Ct. 922 (2021)).

Brewer's examples of automobile-involved homicide convictions do not meaningfully advance his position. *See* AB 19-20. In each of the cited cases, the

13

reviewing courts required sufficient evidence of the heightened mens rea necessary under the elements of the convictions.

- In *United States v. Fleming*, the focus was on whether the evidence before the jury allowed for a finding of malice aforethought to distinguish the crime as murder rather than manslaughter. 739 F.2d 945, 947 (2d Cir. 1984). The court's affirmative holding was founded in evidence showing that "in addition to being intoxicated while driving, defendant drove in a manner that could be taken to indicate depraved disregard of human life[.]" *Id*. at 948.

- In *United States v. Sheffey*, the court's affirmative holding cited the defendant's intoxication with both alcohol and prescription drugs and his consistently dangerous driving on a "precarious" National Park road that Sheffey knew well. 57 F.3d 1419, 1431 (6th Cir. 1995). Thus, it found the evidence sufficient to show malice aforethought.

- In *United States v. Chippewa*, the court found the evidence sufficient to show "extreme reckless disregard for human life that shows malice aforethought" where the jury learned the defendant drove while intoxicated, ignored stop signs, and that he had "multiple alcohol-related driving incidents from which it could have inferred that he knew of the dangers yet disregarded warnings." 141 F.3d 1180 (Table), 1998 WL 123150, at *1 (9th Cir. Mar. 17, 1998) (unpublished).

None of these cases involved courts lowering the mens rea to something akin to ordinary recklessness or negligence; each required evidence sufficient to meet the element of extreme or depraved-heart recklessness. Of course, the review this Court must apply involves the categorical approach and its required focus on the elements of offenses. Nothing in those cases alters or diminishes the mens rea element of discharging a firearm during and in relation to federal voluntary manslaughter that

14

this Court is now considering. Those courts simply found that the mens rea element was met as applied to the charges and facts of those cases.

Brewer's reliance on *United States v. Boose* is also misplaced. There, this Court was determining whether the career-offender enhancement at U.S.S.G. § 4B1.1(a) applied. 739 F.3d 1185 (8th Cir. 2014). The analysis in *Boose* centered around the finding that an Arkansas statute could be violated with reckless driving, although it also required "extreme indifference to the value of human life." 739 F.3d at 1187-88. This Court's later holdings have noted that *Boose* relied on this Court's precedent in *United States v. Ossana*, 638 F.3d 895 (8th Cir. 2011), and it preceded the Supreme Court's decision in *Voisine v. United States*, 579 U.S. 686 (2016), in which the Court held that a reckless assault involves the use of force. *Boose* simply did not analyze in any meaningful way the now-critical difference between ordinary and heightened or depraved-heart recklessness.

This Court has also openly questioned the remaining vitality of *Boose* because its precursor, *Ossana*, "[b]y its terms" was "limited to 'the unadorned offense of reckless driving.'" *United States v. Ramey*, 880 F.3d 447, 449 (8th Cir. 2018) (quoting *Ossana*, 638 F.3d at 901 n.6). Brewer urges that *Borden*'s impact is that "all statutes encompassing reckless conduct, not just those encompassing reckless driving, now fall outside the force clause." AB 22-23. Thus, he claims *Boose* was imbued by *Borden* with fresh vitality. *Ibid*. But that is not the holding of *Borden*

15

given its language in both the plurality and dissent as to whether heightened recklessness offenses continue to qualify. At best for Brewer, *Borden* sidestepped the question. At worst, its reasoning supports the government's view that depraved-heart recklessness offenses continue to qualify.

It should also not go ignored that the inquiry here is about § 924(c), in which a firearm is categorically involved, whereas the cases relied upon by Brewer do not involve firearms or a firearms offense. As the *Borden* plurality reminded, courts engaging in a categorical analysis must focus on the statute that is being construed, including its context and purpose. 141 S. Ct. at 1830. Here, it is § 924(c), which requires the government to prove a defendant "during and in relation to any crime of violence…uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]" And Brewer's plea, his superseding information, and his judgment all show his conviction was under 18 U.S.C. § 924(c)(1)(A)(iii), which requires as an element that a firearm is *discharged* during and in relation to a crime of violence. *See* App. 93 Civ. R. Doc 49; App. 103 Civ. R. Doc. 52; App. 105 Civ. R. Doc. 57; App. 110 Civ. R. Doc. 78.

In *McCoy*, this Court fairly rejected the general notion that reckless-driving cases should dictate the analysis. 960 F.3d at 490. Far afield from reckless driving cases, it is hard to imagine a scenario in which one acts with depraved-heart recklessness, discharges a firearm during and in relation to causing the death of

16

another, but he somehow does not use force against another in the way this Court and the Supreme Court have defined it. Reckless-driving cases are simply not § 924(c) cases, and they do not provide much input regarding questions about the application of federal voluntary manslaughter to § 924(c)(3)(A)(iii) under the categorical approach.

Other courts have also rejected importing those sorts of cases into the analysis of § 924(c), because "§ 924(c) necessarily arises only in situations where a firearm is involved. It will be the exceptionally rare drunk driving case that involves second-degree murder and the discharge of a firearm." *Begay*, 33 F.4th at 1096; *see also In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017) (observing that § 924(c) is a firearms enhancement provision, and so hypotheticals not involving firearms mean "one is left to ask when, if ever, would someone be facing a firearms enhancement" under such scenarios).

### D. Voluntary Manslaughter Meets the Criteria That Force Must Be Directed "Against the Person…of Another" Within the Meaning of § 924(c)(3)(A).

The *Borden* plurality also focused on the requirement that a crime of violence must have an oppositional element, meaning that the force must be directed at another. When addressing ordinary recklessness, the plurality recognized that the reckless aggravated assault crime in *Borden* involved the "use of physical force," that is, "the volitional or active employment of force," *id.* at 1825, but concluded it

did not categorically require the "use of physical force against the person of another," as required by the elements clause.[3]  The plurality concluded that "the phrase 'against another,' when modifying a volitional action like the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1825.  They concluded that the "against another person" language "introduc[es] [a] conscious object" that is the "recipient[] of [the] force," thereby excluding conduct, like recklessness, that is "not directed or targeted at another."  141 S. Ct. at 1826, 1833; *see Begay*, 33 F.4th at 1093.

The plurality explained further: the reason that ordinary recklessness does not involve force "'against the person of another'" is that such a defendant's "fault is to *pay insufficient attention* to the potential application of force."  *Borden*, 141 S. Ct. at 1826-27 (emphasis added).  The plurality reviewed the mental states that give rise to criminal liability, observing that a "person acts 'purposefully' when he 'consciously desires' a particular result"; and "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire."  The Court added, "A person who injures another knowingly, even though not affirmatively wanting the result, still makes a deliberate choice with

---

[3] Justice Thomas did not agree with this reasoning.  In his view, the "use" of force requires intentional conduct, and an offense committed recklessly does not qualify under the elements clause.  *Id.* at 1835.

18

full awareness of consequent harm." *Id.* at 1823. It held that a person who acts with either of these mental states targets another person.

Again, this Court has held that federal voluntary manslaughter requires that a defendant "intentionally caused the death of the victim." *Wakaksan*, 367 F.2d at 645. This Court has also analyzed the question as whether voluntary manslaughter, at minimum, requires depraved-heart recklessness. *See McCoy*, 960 F.3d at 489 (citing authorities). Courts tend to reason that depraved-heart recklessness requires at least a showing that a defendant acted with extreme indifference toward human life. *See Begay*, 33 F.4th at 1094. Thus, a defendant who commits federal voluntary manslaughter necessarily has consciously—not through insufficient attention to risk—used force against another. Even if construed as extreme-indifference recklessness, the First and Ninth Circuits have reasoned, "a defendant 'certainly must be aware that there are potential victims before he can act with indifference towards them.'" *Begay*, 33 F.4th at 1095 (quoting *Baez-Martínez*, 950 F.3d at 127). Accordingly, "a defendant who acts with extreme indifference to the value of human life can 'fairly be said to have actively employed force (*i.e.*, "used" force) 'against the person of another.'" *Begay*, 33 F.4th at 1095 (quoting *Baez-Martínez*, 950 F.3d at 127; brackets omitted).

Federal voluntary manslaughter requires, at minimum, proof of a volitional act taken by one who reasonably anticipates that death or serious bodily injury would

19

likely and logically result. That virtually matches the Supreme Court's description of knowing conduct that qualifies as the use of force against the person of another. *Borden*, 141 S. Ct. at 1823 ("'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire."). And one who uses force while reasonably anticipating that death or serious bodily injury will result is precisely the type of person that § 924(c) is meant to deter.

### E. Brewer's Reliance on *United States v. Flute* Should Be Rejected Because Its Focus Was on a Critically Different Statute and Its Holding is Being Misconstrued.

The same *Flute*-based argument Brewer is making was rejected by this Court in *McCoy*, in service of the same attempt to invalidate voluntary manslaughter as a § 924(c)(3)(A) predicate. 960 F.3d at 490 (discussing *United States v. Flute*, 929 F.3d 584 (8th Cir. 2019)). There, the panel stated plainly that "*Flute*, however, involved a charge of involuntary manslaughter, so it does not speak to whether McCoy's discrete offense of voluntary manslaughter is a crime of violence." Because *McCoy* remains binding precedent, Brewer's argument is foreclosed.

The reason the statutory difference between voluntary and involuntary manslaughter matters is that, in the most innocent version of the involuntary form of the crime, one can be charged if death results even from an otherwise lawful act, so long as it was "without due caution and circumspection." It is a mens rea that on its face falls far lower on the continuum than heightened or depraved heart recklessness.

20

*Ibid.* If that were the statute in focus in this appeal, the Court would be asking much different questions about whether it remains a valid predicate offense post-*Borden*.

*Flute* also did not hold what Brewer requires from it. Brewer claims *Flute* allows for a federal homicide to be committed—that is, a completed offense—when force is applied against a prenatal victim. *See* AB 26-27. A "crime of violence" as defined by § 924(c)(3)(A) refers to the elements of a completed offense: "an *offense* that is a felony and—has an element the use, attempted use, or threatened use of physical force against the person…of another." (emphasis added). The holding in *Flute* was that the defendant could be charged because she poisoned her born-alive child, not because she poisoned a prenatal victim. In *Flute,* the victim was born alive and thus, by operation of federal statute, the victim was a human when the offense was completed. 929 F.3d at 588 (holding "because death completes the offense of manslaughter, the victim's status at death is the determination rather than the victim's status when the injuries were sustained."). *Flute* made clear that involuntary manslaughter is not a completed offense unless and until a human being has died. Flute's crime was against the born-alive human being she killed. Put another way, if Baby Boy Flute had been stillborn, she could not have been charged.

More broadly, Brewer's argument appears to be that Flute's ingestion of drugs was, at the most literal level and in the discrete moment, action committed against a non-human. Therefore, it cannot qualify as 'force against another.' *See* AB 21-25.

21

Aside from *McCoy*, other courts have rejected similar arguments about when and how directly force must be applied for purposes of § 924(c)(3)(A) or its ACCA counterpart at § 924(e)(2)(B)(i). For instance, the Supreme Court has held that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual or emotional force.' And the common-law concept of 'force' encompasses even its indirect application." *United States v. Castleman*, 572 U.S. at 170 (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)).

Thus, poisoning another involves using force against them, even though the death that might result happens later (in Flute's case, after the child was born alive). *See Castleman*, 572 U.S. at 171 (explaining that a poisoning qualifies because the "use of force" "is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm."). Physical force also "need not be applied directly to the body of the victim. Hypothetical scenarios involving no physical contact by the perpetrator (luring a victim to drink poison or infecting a victim with a disease) do not avoid coverage[.]" *United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017).

As the Supreme Court explained in *Castleman*, adopting such a strictly literal definition of when force is applied would lead to absurdity. "Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Castleman*,

22

572 U.S. at 171.  A defendant's "effort to show daylight between physical injury and physical force is therefore unsuccessful."  *Winston*, 845 F.3d at 878.  The result is that focusing like Brewer does here on a temporal delay between the force and the injury is no defense.

*Flute*, although occasioned by complicated circumstances, was a straightforward application of the elements of involuntary manslaughter to the poisoning death of a human being, in that case a newly born child.  The temporal delay between the ingestion of drugs and Baby Boy Flute being born alive did not mean the defendant somehow failed to use force against another.  *Flute*'s outcome *depended* on Baby Boy Flute's status as a human being; it certainly did not describe an avenue for committing federal voluntary manslaughter without applying force to a human being.

## CONCLUSION

There are no compelling reasons in this Court's precedent that should compel it to deviate from its prior decision in *McCoy*, which forecloses Brewer's appeal.  There are also no reasons to create a split among the circuits on the more general question before the Court in this case, regarding the remaining vitality of depraved-heart recklessness offenses following *Borden*.  The government respectfully requests the district court's denial of Brewer's § 2255 motion be affirmed.

23

Dated this 15th day of May, 2023.

ALISON J. RAMSDELL
UNITED STATES ATTORNEY

*/s/ Kevin Koliner*
KEVIN M. KOLINER
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Eighth Circuit Rule 10.6.3, I certify that this brief was prepared using Microsoft Word.

I further certify that I have provided the foregoing brief to the Court via electronic filing of a PDF version of the brief. The PDF file has been scanned for viruses using virus-scanning software approved by the United States Attorney's Office and is virus free.

I further certify that pursuant to Fed. R. App. P. 32(a)(7)(C), the attached answering brief is proportionately spaced, has a typeface of 14 points or more, and contains 5,519 words.

ALISON J. RAMSDELL
UNITED STATES ATTORNEY

*/s/ Kevin Koliner*
KEVIN M. KOLINER
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400

24

## CERTIFICATE OF SERVICE

I hereby certify that on the May 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

ALISON J. RAMSDELL
UNITED STATES ATTORNEY

*/s/ Kevin Koliner*
KEVIN M. KOLINER
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400