# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

USCA No. 22-3452
_____

THOMAS JOSEPH BREWER,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION
HONORABLE LAWRENCE L. PIERSOL
UNITED STATES DISTRICT COURT JUDGE

_____

## APPELLANT'S REPLY BRIEF

_____

Jason J. Tupman, Federal Public Defender
Molly C. Quinn, Chief Appellate Attorney
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Main Avenue, Suite 400
Sioux Falls, SD 57104
Phone: (605) 330-4489
Fax: (605) 330-4499

ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

Page(s)

Table of Authorities ..................................................................................iii

Introduction ............................................................................................1

Argument .................................................................................................2

    A.    This Court's pre-*Borden* opinion in *McCoy* does not control here..............2

        1.    The government reads too much into the denial of
certiorari in *McCoy* ...................................................................3

        2.    *McCoy* was based on now-abrogated or distinguished
precedent ...................................................................................4

    B.    The minimum mental state for voluntary manslaughter does not
satisfy the force clause................................................................4

        1.    The minimum mental state for voluntary manslaughter is
depraved heart recklessness.......................................................4

        2.    This Court recently addressed mental states falling between
knowledge and recklessness in a pair of cases issued after
the government's brief in this case ...........................................6

        3.    *Lung'aho* and *Janis* support Brewer's argument that
voluntary manslaughter does not qualify under the § 924(c)
force clause................................................................................9

        4.    The government's argument that a firearm is categorically
involved in all § 924(c) prosecutions is irrelevant to the
meaning of "crime of violence."...............................................12

    C.    Voluntary manslaughter encompasses certain prenatal conduct,
which is not conduct "against the person . . . of another" within
the meaning of § 924(c)(3)(A)...................................................14

Conclusion.............................................................................................18

i

Certificate of Service ......................................................................................................20

Certificate of Compliance .............................................................................................21

ii

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Borden v. United States*, 141 S. Ct. 1817 (2021) ..................................................*passim*

*McCoy v. United States*, 141 S. Ct. 2819 (June 21, 2021) .........................................3

*Moncrieffe v. Holder*, 569 U.S. 184 (2013)...............................................................14

*Singleton v. Comm'r*, 439 U.S. 940 (1978)..................................................................3

*United States v. Carver*, 260 U.S. 482 (1923)..............................................................3

*United States v. Castleman*, 572 U.S. 157 (2014) ......................................................17

*United States v. Davis*, 139 S. Ct. 2319 (2019) ...................................................... 1, 2

**United States Court of Appeals Cases**

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ....................................................................13

*Janis v. United States*, 73 F.4th 628, No. 22-2471, 2023 WL 4540528
(8th Cir. July 14, 2023) ....................................................................................*passim*

*McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020) ..........................................*passim*

*United States v. Báez-Martínez*, 950 F.3d 119 (1st Cir. 2020) ..................................2

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022)..............................................13

*United States v. Chambers*, 898 F.2d 148 (table), No. 88–5653, 1990 WL 29160
(4th Cir. Mar. 5, 1990)................................................................................................10

*United States v. Cungtion*, 72 F.4th 865 (8th Cir. 2023)............................................4

*United States v. Flute*, 929 F.3d 584 (8th Cir. 2019) ......................................... 15, 16

*United States v. Kepler*, __ F.4th __, No. 22-5006, 2023 WL 4717663
(10th Cir. July 25, 2023).............................................................................................6

Appellate Case: 22-3452     Page: 4     Date Filed: 08/02/2023 Entry ID: 5302444

*United States v. Lung'aho*, 72 F.4th 845 (8th Cir. 2023) ................................................*passim*

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011) .................................................15

*United States v. Winston*, 845 F.3d 876 (8th Cir. 2017) .......................................................17

*Wakaksan v. United States*, 367 F.2d 639 (8th Cir. 1996) ....................................................5

## United States Code

1 U.S.C. § 8(a) ....................................................................................................15

18 U.S.C. § 844(f)(1) ...............................................................................................6

18 U.S.C. § 924(c)(1)(A) ...........................................................................................13

18 U.S.C. § 924(c)(3) ........................................................................................1, 13, 19

18 U.S.C. § 924(c)(3)(A) ....................................................................................1, 2, 14, 15

18 U.S.C. § 924(c)(5) .............................................................................................13

18 U.S.C. § 1028(b)(3)(B) .........................................................................................13

18 U.S.C. § 1112(a) ...............................................................................................12

Appellate Case: 22-3452    Page: 5    Date Filed: 08/02/2023 Entry ID: 5302444

# INTRODUCTION

Thomas Joseph Brewer asks this Court to find that federal voluntary manslaughter is not a "crime of violence" under 18 U.S.C. § 924(c)(3) as that statute has been interpreted by the Supreme Court. As enacted, the definition of "crime of violence" had two prongs—the force clause in subsection (A), and the residual clause in subsection (B):

> [T]he term "crime of violence" means an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The Supreme Court invalidated the residual clause in *United States v. Davis*, 139 S. Ct. 2319 (2019). The Supreme Court held that the force clause requires more than reckless conduct in *Borden v. United States*, 141 S. Ct. 1817, 1821-22 (2021) (plurality opinion); *id.* at 1835 (Thomas, J., concurring).

At the time of Brewer's conviction, voluntary manslaughter unquestionably qualified as a "crime of violence." It did so under the now-invalidated residual clause. Voluntary mansluaghter does not qualify under the remaining "force clause" in § 924(c)(3)(A). Brewer's conviction and sentence for the § 924(c) offense were entered in violation of his due process rights.

1

The question in this case is not whether voluntary manslaughter is a serious offense. (It is). The question is not whether Brewer's conviction for voluntary manslaughter itself should be vacated. (It should not). The question is not whether Congress intended voluntary manslaughter to be a "crime of violence." (It did—under the residual clause. *Cf. United States v. Báez-Martínez*, 950 F.3d 119, 130 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2805 (2021), *reh'g denied*, 142 S. Ct. 922 (2021)) ("The question whether Congress intended attempted murder to be a violent felony has an easy answer: of course it did. And the ACCA as enacted contained a residual clause that easily encompassed attempted murder.")). The question is whether voluntary manslaughter qualifies as a crime of violence under the § 924(c)(3)(A) force clause. For the reasons set out in Brewer's opening brief and below, it does not.

## ARGUMENT

### A. This Court's pre-*Borden* opinion in *McCoy* does not control here.

As Brewer acknowledged in his opening brief, Appellant's Br., at 9-12, in an opinion issued after *Davis* but before *Borden*, this Court held that federal voluntary manslaughter qualified as a crime of violnece under the § 924(c)(3)(A) force clause. *McCoy v. United States*, 960 F.3d 487 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2319 (2021). The government argues that this panel is bound by *McCoy*. Appellee's Br., at 7, 9-16. Brewer respectfully submits that it is not.

2

### 1. The government reads too much into the denial of certiorari in *McCoy*.

The government places great emphasis on the Supreme Court's denial of the petition for a writ of certiorari in *McCoy*. *See* Appellee's Br., at i, 7, 10. It's true, as the government notes, that the Supreme Court denied McCoy's petition for a writ of certiorari shortly after issuing its opinion in *Borden*. *See McCoy v. United States*, 141 S. Ct. 2819 (June 21, 2021) (mem.). But "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *United States v. Carver*, 260 U.S. 482, 490 (1923). "[A]s all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, [the Supreme] Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review." *Singleton v. Comm'r*, 439 U.S. 940, 944 (1978) (opinion of Stevens, J., respecting the denial of certiorari) (quoting *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917-19 (1950) (opinion of Frankfurter, J., respecting the denial of certiorari)). The Court may decline to take a case that raises an important question if the record is cloudy or if the issue should be further explored by the lower courts. *Id.* at 943. "Wise adjudication has its own time for ripening." *Id.*

The fact that the Supreme Court declined to grant certiorari in a case where the lower court opinion relied exclusively on precedent that was recently distinguished or

Appellate Case: 22-3452     Page: 8     Date Filed: 08/02/2023 Entry ID: 5302444

abrogated by the Court cannot bear the weight the government places on it. The denial of certiorari in *McCoy* is not binding or instructive on the question raised here.

### 2. *McCoy* was based on now-abrogated or distinguished precedent.

The government does not appear to dispute that *McCoy* was based on precedent that was either distinguished or abrogated by *Borden*. *See* Appellee's Br., at 9 ("Because the precedent *at the time* (namely, *[United States v.] Fogg*[, 836 F.3d 951 (8th Cir. 2016)] and *Voisine v. United States*, 579 U.S. 686 (2016)) discussed ordinary reckless, there was no occasion in *McCoy* to parse the differences between ordinary and depraved-heart recklessness offenses." (emphasis added)). This Court has recognized that "*Borden* has required us to reexamine what we have done before and even abandon a few previously settled decisions." *United States v. Cungtion*, 72 F.4th 865, 867 (8th Cir. 2023). This Court should reexamine whether voluntary manslaughter qualifies as a "crime of violence" in light of *Borden*.

### B. The minimum mental state for voluntary manslaughter does not satisfy the force clause.

The parties agree that *McCoy* did not address depraved heart recklessness. This case requires the Court to do so.

### 1. The minimum mental state for voluntary manslaughter is depraved heart recklessness.

The government acknowledges that this Court clearly stated in *McCoy* that the required mental state for voluntary manslaughter is a general intent to kill, intent to do

4

serious bodily injury, or depraved heart recklessness. Appellee's Br., at 8 (quoting *McCoy*, 960 F.3d at 489). Nevertheless, the government argues that there is "foundation for holding that voluntary manslaughter requires intent." *Id.* (quoting *Wakaksan v. United States*, 367 F.2d 639, 645 (8th Cir. 1966)).

In *Wakaksan*, the Court held that where the defendant raised defenses of insanity, self-defense, and accidental death, evidence of a prior assault and battery of the same victim was relevant to show that the defendant intentionally caused the death of the victim. *Wakaksan v. United States*, 367 F.2d 639, 645 (8th Cir. 1996). The Court stated, "[a]n essential element of the prosecution's case was to establish that the appellant intentionally caused the death of the victim." *Id.* This statement was made in the context of an evidentiary ruling relating to issues of insanity, self-defense, and accident. It does not define the mens rea of voluntary manslaughter.

As this Court has stated, the minimum mental state for voluntary manslaughter is depraved heart recklessness. *McCoy*, 960 F.3d at 489 (quoting *United States v. Serawop*, 410 F.3d 656, 666 (10th Cir. 2005)). The categorical approach requires the Court to consider the *least serious conduct* a statute covers. *See Borden*, 141 S. Ct. at 1832 (plurality opinion) ("An offense does not qualify as a 'violent felony' unless the *least serious conduct* it covers falls within the elements clause." (emphasis added)). Voluntary manslaughter does not qualify as a crime of violence under the § 924(c) force clause unless depraved heart recklessness satisfies this definition.

5

**2. This Court recently addressed mental states falling between knowledge and recklessness in a pair of cases issued after the government's brief in this case.**

This Court recently issued two opinions that shed light on the status of depraved heart recklessness under the § 924(c) force clause—*United States v. Lung'aho*, 72 F.4th 845 (8th Cir. 2023) (holding that federal arson is not a "crime of violence" under the § 924(c) force clause) and *Janis v. United States*, 73 F.4th 628, No. 22-2471, 2023 WL 4540528 (8th Cir. July 14, 2023) (holding that federal second-degree murder is a "crime of violence" under the § 924(c) force clause).[1] Both cases were issued after the government filed its brief in this case. Both cases support Brewer's argument that voluntary manslaughter is not a crime of violence.

***United States v. Lung'aho***: In *Lung'aho*, the Court interpreted the term "maliciously" in the federal arson statute, 18 U.S.C. § 844(f)(1). 72 F.4th at 847. The Court found that the term "malice" or "malicious" describes "a state of mind requiring intentionality or a 'willful disregard of [a] likelihood' of harm." *Id.* at 848 (quoting *United States v. Sweet*, 985 F.2d 443, 445 (8th Cir. 1993)). The Court reasoned that under this definition, "malice" falls between recklessness and knowledge on "a sliding scale of probabilities," with recklessness requiring a "substantial and unjustified" risk, malice requiring a "likelihood" of risk, and knowledge requiring

---

[1] The Tenth Circuit also recently issued an opinion holding that federal second-degree murder is a crime of violence under the § 924(c) force clause. *United States v. Kepler*, __ F.4th __, No. 22-5006, 2023 WL 4717663 (10th Cir. July 25, 2023).

6

"practical certainty" of risk. *Id.* at 849. The Court placed "malice" in the "in-between" mental states contemplated by *Borden. Id.* Finally, and most important to the issue here, the Court found that under the reasoning of both the *Borden* plurality opinion and Justice Thomas's concurring opinion, malice does not satisfy the force clause. *Id.* at 849-50. "Any way you slice it, . . . [c]onsciously creating a likelihood of harm to property does not satisfy the force clause, despite the high risk involved." *Id.* at 851 (internal quotation omitted).

First, *Lung'aho* reasoned, malice does not require the targeting or conscious direction at someone or something required by the force clause under the *Borden* plurality opinion. *Id.* at 850. "Recall that acting 'maliciously' under the statute requires an act in 'willful disregard of the likelihood' that property with a federal connection will be damaged or destroyed." *Id.* (quoting *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009)). "A conscious decision to ignore a risk of harm is different from intending it." *Id.* "Although malice involves a higher level of risk than recklessness, the two share a common trait: neither requires actors to 'consciously direct[ ]' their acts towards a specific person or property. *Id.* (quoting *Borden*, 141 S. Ct. at 1823-24, 1826-27 (plurality opinion)). "Even consciously disregarding a high risk of harm does not *necessarily* involve 'targeting.' " *Id.* (quoting *Borden*, 141 S. Ct. at 1826 (plurality opinion)). Thus, under the *Borden* plurality's reasoning, not all burnings committed maliciously involve the use of physical force against the property of another. *Id.*

7

Further, *Lung'aho* reasoned, maliciously burning does not qualify under Justice Thomas's interpretation of the force clause either. *Id.* at 850-51. Under Justice Thomas's concurring opinion in *Borden*, the force clause requires an intentional act designed to cause harm. *See id.* at 850. "The malice required by the arson statute is a willful disregard of a likelihood of harm, but the minimum mental state under Justice Thomas's interpretation of the force clause is at least knowledge, if not purpose." *Id.* at 851 (citing *Borden*, 141 S. Ct. at 1835 (Thomas, J., concurring)). "We know that malice falls short of both, so arson is not a 'crime of violence' under Justice Thomas's approach either." *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)).

**Janis v. United States**: In *Janis*, on the other hand, the Court held that federal second-degree murder qualifies as a "crime of violence" under the § 924(c) force clause. 2023 WL 4540528, at * 8. *Janis* found that malice aforethought, the heightened mens rea required for second-degree murder, satisfies the force clause as interpreted in *Borden. See generally id.* at *2-6. "Because it requires malice aforethought, [second-degree murder] always involves 'consciously directed' force and thus constitutes a 'crime of violence' under 924(c)'s force clause." *Id.* at *3.

*Janis* emphasized that "malice aforethought" is "a murder-specific term appearing only once in the entire *United States Code.*" *Id.* This term "distinguishes between more and less culpable killings," including distinguishing between murder and manslaughter in the federal code *Id.* The Court found that "[t]he history and

8

definition of 'malice aforethought' demonstrate that federal second-degree murder satisfies § 924(c)'s force clause." *Id.* at *4. "The phrase 'malice aforethought' necessarily denotes the oppositional conduct that the force clause requires: 'an intent willfully to act in callous and wanton disregard of the consequences to human life.' " *Id.* (quoting *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021)). Malice aforethought is not simply the willful disregard of the likelihood of harm: "[Malice aforethought] requires 'more risk and culpability' than the standard of 'willful disregard of the likelihood' of harm." *Id.* (quoting *Lung'aho*, 2023 WL 4359975, at *3).

Janis also rejected the argument that second-degree murder is overbroad because the malice aforethought element of this offense can be established by depraved heart or extreme recklessness. *Id.* at *4-5. *Janis* found that the formulation of extreme recklessness for second-degree murder "is close to knowledge and far from ordinary recklessness." *Id.* at *5 (discussing *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978) (per curiam)). "Because the risk from extreme-reckless conduct is so high, the harmful result nears 'practical certainty' that force will be applied to another person." *Id.*

### 3. *Lung'aho* and *Janis* support Brewer's argument that voluntary manslaughter does not qualify under the § 924(c) force clause.

Turning back to federal voluntary manslaughter, this Court's recent cases in *Lung'aho* and *Janis* support Brewer's argument that the minimum mental state for

9

voluntary manslaughter falls short of the mental state required by the force clause. The minimum mental state sufficient to establish voluntary manslaughter—depraved heart recklessness—is closer to the "willful disregard of [a] likelihood of harm" found to be insufficient for the force clause in *Lung'aho* than it is to the malice aforethought element found to be sufficient in *Janis*.

Take the driving example from Brewer's opening brief. *See* Appellant's Br., at 18.[2] The federal voluntary manslaughter statute can be violated by drunk and dangerous driving. *See, e.g.*, *United States v. Chambers*, 898 F.2d 148 (table), No. 88-5653, 1990 WL 29160, at *1 (4th Cir. Mar. 5, 1990) (per curiam) (unpublished) (sentencing appeal in voluntary manslaughter case that stemmed from an automobile accident where the defendant drove between 100 and 110 miles per hour, failed to stop at two stop signs and a red light, collided with a Navy Exchange van, had a blood alcohol level of .218, and had a suspended driver's license for a prior DUI). In this example, "no one would say that the [defendant] 'targeted' " the Navy Exchange van. *See Lung'aho*, 72 F.4th at 850. The defendant "consciously directed" his attention to driving, not to the other drivers and vehicles he placed in danger. *See id.* The Navy

---

[2] Brewer also cited a number of second-degree murder cases arising out of drunk and dangerous driving, arguing that these cases were instructive because second-degree murder has the same mens rea as voluntary manslaughter. *See* Appellant's Br., at 18-20. Brewer acknowledges that *Janis*'s emphasis on the unique nature of the malice aforethought element of second-degree murder casts doubt on his assertion that the second-degree murder driving cases are instructive here.

Appellate Case: 22-3452     Page: 15     Date Filed: 08/02/2023 Entry ID: 5302444

Exchange van and other vehicles were the "mere recipient of force." *Id.* (quoting

*Borden*, 141 S. Ct. at 1825 (plurality opinion)). Under the *Borden* plurality's reasoning (as

applied in *Lung'aho*), this conduct does not qualify under the force clause. *See id.* Nor

does it qualify under Justice Thomas's concurrence. The defendant's driving was not

an "intentional act[] *designed to cause harm.*" *Id.* at 851 (quoting *Borden*, 141 S. Ct. at 1835

(Thomas, J., concurring) (emphasis added in *Lung'aho*)). It follows from *Lung'aho* that

voluntary manslaughter does not qualify as a crime of violence under the force clause.

    *Janis* does not compel the opposite conclusion. Indeed, *Janis* repeatedly

emphasized that malice aforethought is a unique element that distinguishes murder

from manslaughter and other less culpable killings:

- " '[M]alice aforethought'—a murder-specific term appearing only once
  in the entire *United States Code* (18 U.S.C. § 1111, 'Murder')—
  distinguishes between more and less culpable killings." 2023 WL
  4540528, at *3.

- "Historically, it 'focus[ed] on mental state in order to distinguish those
  who deserved death from those who . . . would be spared.' " *Id.* (quoting
  *Tison v. Arizona*, 481 U.S. 137, 156 (1987)).

- "As governments began deciding that not all murders warranted
  execution, they retained 'malice aforethought' to distinguish murder
  from manslaughter. This distinction has deep roots." *Id.* (citations
  omitted).

- "The federal murder statute continues the tradition of using 'malice
  aforethought' to distinguish murder from manslaughter; the more-
  culpable homicide from the less-culpable one. *Compare* 18 U.S.C.
  § 1111(b) (authorizing a life sentence for murder) *with* 18 U.S.C. § 1112

(setting a 15-year maximum for manslaughter, defined as an unlawful killing 'without malice')." *Id.*

- "The big division in culpability is not *within* malice-aforethought homicides, but *between* homicides committed with malice aforethought and those without." *Id.* at *4 n.4.

Even *Janis*'s discussion of "depraved heart" or "extreme recklessness" in the context of second-degree murder is derived from a specific articulation of the meaning of "malice." *See id.* at *5 (discussing the "often repeated" articulation of "malice" from *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978) (per curiam)).

*Janis*'s holding is based on the unique status of malice aforethought. It should not be read to require a finding that the less-culpable offense of voluntary manslaughter, which, after all, is defined as "the unlawful killing of a human being *without malice*," qualifies under the force clause as well. 18 U.S.C. § 1112(a) (emphasis added). If the Court finds that *Janis* controls here, Brewer respectfully submits that *Janis* was wrongly decided and is inconsistent with *Lung'aho* and preserves the arguments raised here for further review by the full Court or by the Supreme Court.

### 4. The government's argument that a firearm is categorically involved in all § 924(c) prosecutions is irrelevant to the meaning of "crime of violence."

As set forth above, because voluntary manslaughter can be committed by risky but untargeted conduct like drunk and dangerous driving, it cannot qualify under the § 924(c) force clause. *See Borden*, 141 S. Ct. at 1831 (plurality opinion) (describing unsafe driving like running a stop sign, veering onto the sidewalk, texting while

12

driving, and drunk driving as reckless offenses that should not qualify under the force clause). The government argues that "[i]t should . . . not go ignored that the inquiry here is about § 924(c), in which a firearm is categorically involved." Appellee's Br., at 16. This argument is unavailing.

The inquiry here is about the meaning of the definition of "crime of violence" in § 924(c)(3). This definition applies in dozens of federal criminal statutes, not just in prosecutions under § 924(c)(1)(A). *See, e.g.*, 18 U.S.C. § 1028(b)(3)(B) (prohibiting using false identification documents in connection with a crime of violence as defined in § 924(c)(3)); 18 U.S.C. § 924(c)(5) (prohibiting using, carrying, or possessing armor piercing ammunition in connection with a crime of violence as defined in § 924(c)(3)). The Court's finding in this case applies throughout the criminal code, not just in prosecutions for using and carrying a firearm in connection with a crime of violence under § 924(c) itself.

Indeed, as the Fourth Circuit acknowledged in *In re Irby* (a case cited by the government in support of its argument on this point), no matter how bad a fit the categorical approach may seem for § 924(c) cases, "precedent requires application of that approach." 858 F.3d 231, 234 (4th Cir. 2017) (cited at Appellee's Br., at 17); *see also United States v. Begay*, 33 F.4th 1081, 1105 (9th Cir.), *cert. denied*, 214 L. Ed. 2d 153, 143 S. Ct. 340 (2022) (Ikuta, J., dissenting in part) ("Even assuming that as a factual matter, a defendant like Begay who is charged with both second-degree murder under

13

§ 1111(a) and discharging a firearm during a crime of violence under § 924(c) will virtually always have used a firearm to commit the § 1111(a) offense, the categorical approach prohibits consideration of this factual context.").

The question before the Court under the categorical approach is whether federal voluntary manslaughter qualifies as a "crime of violence" under § 924(c)(3)(A) in all cases, not just those involving the use of a firearm. Consideration of the "least of the acts criminalized," *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (cleaned up), by the voluntary manslaughter statute is at the core of this issue. Under this approach— despite the government's arguments to the contrary and this Court's recent opinion in *Janis*—the minimum mental state required for voluntary manslaughter does not satisfy the force clause.

### C. Voluntary manslaughter encompasses certain prenatal conduct, which is not conduct "against the person . . . of another" within the meaning of § 924(c)(3)(A).

Voluntary manslaughter is overbroad for a second reason. It can be committed by certain prenatal acts, which by definition are acts before there is a "person . . . of another" within the meaning of federal law. *See* Appellant's Br., pp. 24-29.

As Brewer acknowledged in his opening brief, the Court rejected this argument in *McCoy*. Appellant's Br., at 25 n.7, 29 (citing *McCoy*, 960 F.3d at 490); *see also Janis*, 2023 WL 4540528, at *7 (rejecting similar argument in the context of second-degree murder because the petitioner suggested no authority that a mother could be

14

convicted of second-degree murder based on prenatal conduct). The government

does not dispute that *McCoy* was decided before *Borden* and the plurality opinion's

emphasis that the force must be actively employed against another person:

- "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator *direct his action at, or target, another individual.*" 141 S. Ct. at 1825 (plurality opinion) (emphasis added).

- "[A reckless driver] has not used force 'against' another person in the targeted way that clause requires." *Id.* at 1827.

- "Offenses with a *mens rea* of recklessness . . . do not require, as ACCA does, the active employment of force against another person." *Id.* at 1834.

In light of *Borden*, Brewer respectfully submits that *McCoy*'s rejection of this argument

is not binding here. In the event the Court finds it is bound by precedent to reject this

argument, Brewer raises the argument to preserve it for further review.

Turning to the merits, the government does not dispute the key components of

this argument. The § 924(c) force clause requires that the offense have "as an element

the use, attempted use, or threatened use of physical force *against the person* or property

*of another.*" 18 U.S.C. § 924(c)(3)(A) (emphasis added). The term "person" excludes

unborn children under federal law. 1 U.S.C. § 8(a); *United States v. Montgomery*, 635 F.3d

1074, 1086 (8th Cir. 2011). And this Court has interpreted the statutory language "the

unlawful killing of a human being" to encompass a pregnant person's prenatal

conduct so long as it results in the death of a later-born infant. *United States v. Flute*,

15

929 F.3d 584 (8th Cir. 2019) (addressing involuntary manslaughter under 18 U.S.C. § 1112(a)).

Instead, the government focuses on irrelevant differences between involuntary and voluntary manslaughter, noting that the most innocent version of involuntary manslaughter can be committed by an otherwise lawful act done "without due caution and circumspection." Appellee's Br., at 20. But Brewer's argument under *Flute* is based on the Court's interpretation of the statutory language "the unlawful killing of a human being," not the mental state required for various forms of manslaughter. In other words, involuntary manslaughter likely does not qualify as a crime of violence under the § 924(c) force clause for multiple reasons, including that it requires far less than reckless conduct, but this distinction between involuntary and voluntary manslaughter does not defeat Brewer's argument that the statutory language "the unlawful killing of a human being" renders all forms of manslaughter overbroad for a second, independent reason.

The government also argues that Brewer misconstrues *Flute. See* Appellee's Br., at 21 ("Brewer claims *Flute* allows for a federal homicide to be committed—that is, a completed offense—when force is applied against a prenatal victim."). To be clear, Brewer's argument is that a statute that can be violated by force that is applied before there is another "person" within the meaning of federal law cannot qualify as "the use, attempted use, or threatened use of physical force *against the person . . . of another*"

16

regardless of whether the statute itself requires a born-alive victim before the offense can be completed. The phrase "against the person . . . of another" in the force clause requires more than the federal homicide statutes require under the born-alive rule applied in *Flute*. Indeed, *Borden* repeatedly emphasized that to qualify under the force clause, the force must be actively employed "against" another person. 141 S. Ct. at 1825, 1827, 1834 (plurality opinion).

The government also cites cases holding that the indirect use of force can qualify under the force clause. Appellee's Br., at 22-23. None of these cases involved a pregnant person's prenatal conduct that affected a later-born infant. *See United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017) (addressing hypothetical scenarios involving lack of physical contact between the perpetrator and an already-born victim); *see also United States v. Castleman*, 572 U.S. 157, 171 (2014) (addressing whether the indirect use of force qualifies as a "misdemeanor crime of domestic violence"). Indeed, the force clause at issue in *Castleman* did not include the "against the person . . . of another" language at the heart of Brewer's argument. *See Castleman*, 572 U.S. at 160-61 (quoting definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A)).

Brewer's argument is not merely an attempt "to show daylight between physical injury and physical force," *see Winston*, 845 F.3d at 878 (quoted by Appellee's Br., at 23), but rather is a straightforward application of the text of the force clause: there can be no qualifying use of force "against the person . . . of another" if there is no other

17

"person" at the time of the use of force. The government's argument ignores the importance of the word "against." *Borden* does not allow such an interpretation of the force clause. Because the federal voluntary manslaughter statute covers certain prenatal conduct, it does not qualify as a "crime of violence" under the § 924(c) force clause.

## CONCLUSION

The parties agree that Congress intended voluntary manslaughter to qualify as a "crime of violence." And it did so qualify under the now-invalidated residual clause. It does not qualify under the remaining force clause. Congress could easily solve the "problem" of voluntary manslaughter no longer qualifying as a crime of violence. It could enumerate federal statutes that qualify and include voluntary manslaughter. It could list generic offenses and define them in a way that includes federal voluntary manslaughter. It could amend the definition of "crime of violence" to adopt a circumstance-specific (rather than categorical) approach. It could modify the language of the force clause to encompass the unlawful killing of a human being without malice. And it could enact a constitutionally adequate residual clause that encompasses voluntary manslaughter. But it didn't do so before Brewer was convicted, and it hasn't done so yet. In Brewer's case, voluntary manslaughter qualified as a "crime of violence" only under the now-invalidated residual clause.

Because voluntary manslaughter no longer qualifies as a "crime of violence" under § 924(c)(3), Brewer asks the Court to reverse the order denying his § 2255 motion and vacate his conviction and sentence for the § 924(c) offense.

Dated this 2nd day of August, 2023.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

_____/s/   Molly C. Quinn_____
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Main Avenue, Suite 400
Sioux Falls, SD 57104
Phone: (605) 330-4489
Fax: (605) 330-4499
Ecf8_sf@fd.org

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses and that the scan showed the electronic version of the foregoing is virus-free.

_/s/ Molly C. Quinn_
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,610 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Garamond font.

Dated this 2nd day of August, 2023.

_/ s /   Molly C. Quinn_
Molly C. Quinn, Chief Appellate Attorney
Attorney for Appellant Thomas Joseph Brewer

21